### THE COLLECTOR v. HUBBARD.

1. A promise on the part of a collector of taxes to repay a tax illegally collected and paid only under protest cannot be implied where statute makes it the duty of such officer to pay into the public treasury without any deduction on account of claims of any description the gross amount that he receives.

2. The 19th section of the act of July 13th, 1866, which enacts that no suit shall be maintained in *any* court to recover a tax illegally assessed, except on certain conditions stated in the section, operates on all suits brought subsequently to the time fixed by the act for it to take effect, and on suits brought in State courts as well as in Federal.

3. Prior acts giving persons a right to sue, without similar conditions, did not confer on them any such vested right so to sue, in regard to transactions which occurred before the passage of the act of 1866, as that they still could sue irrespective of the conditions after the time when this act by its terms was to take effect.

4. Nor had such persons, in such a case as is mentioned in the first paragraph above, any vested right to sue independently of statute.

5. The 117th section of the Internal Revenue Act of 1864, which required a stockholder in companies mentioned in the section, to return as income all gains and profits in them to which he should be *entitled*, whether the same were " divided or *otherwise*," embraces not only dividends declared, but profits not divided and invested partly in real estate, machinery, and raw material, and partly applied to the payment of debts incurred in previous years.

ERROR to the Supreme Court of Connecticut; the case being thus:

The 117th section of the Internal Revenue Act of June 30th, 1864,* which laid what was known as the income tax,

---

* 13 Stat. at Large, 281.

after providing for the collection of an income tax from certain classes of companies specified, and enacting that "in estimating the annual gains, profits, or income of any person," revenue from such and such sources "shall be included and assessed as part of the income of such person," proceeds:

"And the gains and profits of all companies, whether incorporated or partnership, other than the companies specified in this section, shall be included in estimating the annual gains, profits, or income of any person *entitled* to the same, *whether divided or otherwise.*"

With this enactment in force, one Hubbard owned, A.D. 1864, certain shares in two manufacturing companies (being companies other than those previously specified in the section), which in that year made large profits and made dividends of part of them, though not of the whole of them. The excess was not divided, nor had it been in any way set apart from the general assets of the respective corporations, or appropriated for the use of the stockholders, otherwise than as the law would imply from the existence of them. On the contrary, it was part of the case as settled and admitted by the parties:

"That from time to time during said year, and without any intention to defraud the government, unless the investment hereinafter named constituted such fraud by implication of law, said corporations invested said profits in part in real estate, machinery, and raw material, proper for carrying on their business, and *in part for the payment of debts incurred in previous years*, and the same remained so invested in 1865."

Hubbard, when making in the year just named his return of income for the preceding year, returned as part of his income the dividends which had been made on his stock, but would not return the undivided profits. The assessor insisted on his returning his proportion of these also, settling the proportion by a reference to the number of shares which

he held in the company compared with the whole number into which its capital stock was divided. Under compulsion from the assessor he then did make such return, and under like compulsion did pay, on the 19th August, 1865, the tax accordingly, protesting in due form against the collection. The assessor had given Hubbard due notice of where appeals from the assessment would be held, but Hubbard did not make any appeal, either to the assessor or to the Commissioner of Internal Revenue, according to the provisions of law in that regard, which allowed him to do so, though it did not make his having done so a condition of his bringing suit. On the contrary, relying on his simple payment under protest he brought suit in the Circuit Court of the United States to recover the tax. It was not denied that at the time when he brought that action such a suit could be maintained to recover such a tax illegally paid under protest though no such appeal had been made. However, after Hubbard had thus brought his suit in the Circuit Court, Congress, on the 13th July, 1866, passed an act* whose 19th section was thus:

"That no suit shall be maintained in *any* court for the recovery of any tax alleged to have been erroneously or illegally assessed or collected, until appeal shall have been duly made to the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof, and a decision of said commissioner shall be had thereon, unless such suit shall be brought within six months from the time of said decision, or within six months from the time this act takes effect," &c.

The suit was called for trial in June, 1867, and in consequence of this enactment and the admitted want of appeal to the commissioner, the Circuit Court dismissed the case.

The plaintiff then, on the 9th of August, 1867, sued the collector in *indebitatus assumpsit* in one of the State courts of Connecticut, a case as above stated being agreed on, and it

* 14 Stat. at Large, 152.

being further admitted that the collector had, prior to the bringing of the suit, paid over to the Treasury of the United States the whole amount of the tax collected; a payment over which was made in pursuance of the act of Congress of March 3d, 1865,* by which collectors were required to pay daily into the treasury the gross amount of all duties, taxes, and revenue received or collected in virtue of the internal revenue acts, without any abatement or deduction on account of compensation, &c., or claims of any description whatever; the act, however, or other acts containing provisions authorizing a person from whom a tax has been collected to sue the collector for its recovery, and provisions for repayment by the treasurer to the collector of whatever should be thus recovered against him.

In the suit in the State court, the collector set up the fact of his payment over, and more particularly the act of 1866 as a bar to the suit; maintaining, also, as a second ground, that if the suit was not thus barred the tax had been rightly assessed and levied.

The court in which this second suit was brought gave judgment for the plaintiff, and on error to the Supreme Court that judgment was affirmed. The case was now brought here under the 25th section of the Judiciary Act. The questions being:

I. Did the act of Congress of 1866 incapacitate Hubbard from bringing the second suit?

II. If not, were the undivided profits, applied as they had been, "income" within the meaning of the act of 1864?

*Mr. C. E. Perkins, in support of the judgment below:*

I. The fact of payment over is plainly no bar to our suit, Congress authorizing suits against collectors to recover taxes illegally paid, and making abundant provision for repayment to the collector if judgment go against him.

Neither is the act of 1866, requiring a previous appeal to the commissioner, a bar.

---

* 13 Stat. at Large, 483.

1. The act was prospective only. It was not intended to affect the rights of parties already vested. Courts refuse to give statutes a retroactive construction, unless the intention is so clear and positive as by no possibility to admit of any other construction.* It would be grossly unjust to us to apply this rule. At the time when the act was passed we had a suit pending in the Circuit Court. It was not reached for trial till June, 1867, more than six months after the act took effect. The court then dismissed the case because the act took away its jurisdiction, and we were deprived of any redress. A construction which would bring about such a result should be avoided.

2. The act only refers to proceedings in courts of the United States.†

3. It is a kind of statute of limitations, and it is set up as a bar to an action in a State court arising at common law. But Congress has no power to pass acts barring such suits. It is only when causes of action arise under laws of the United States that that body can prohibit or limit proceedings in State courts. This case does not so arise. One citizen of Connecticut has here money belonging to another citizen, for which, by the laws of Connecticut, an action of *indebitatus assumpsit* will lie. Congress cannot affect *this* right of action. As soon as the money was illegally collected and paid under duress, a right to recover it *vested* in the plaintiff with which Congress could not interfere.

II. *As to the merits.* The internal revenue enactment says expressly that only the gains and profits to which a stockholder is "entitled" shall be returned. In no possible sense of the word is a stockholder *entitled* as income to moneys spent by the corporation during the year in paying its debts and preparing for its future business. This is a Connecticut corporation, and the question of the right of a

---

* Plumb v. Sawyer, 21 Connecticut, 351; McEwen v. Den, 24 Howard, 242.

† Carpenter v. Snelling, 97 Massachusetts, 452; Griffin v. Ranney, 35 Connecticut, 239.

stockholder to their property should be and is fixed by Connecticut law.   In *Phelps* v. *Farmers' Bank*,\* the court say:

" The profits of a bank, no matter when made, until separated from the stock by declaring a dividend, are mere increment and augmentation of the stock.   They are properly stock themselves, composing a part of the stock of the bank, and will pass with the stock under that name either by contract, bequest, or levy of execution."

The rule is the same in other States.

In *Minot* v. *Paine*,† a Massachusetts case, the court say:

" The net earnings of a railroad corporation remain the property of the company as fully as its other property till the directors declare a dividend.   A shareholder *has no title to them* prior to the dividend being declared. . . . The money in the hands of the directors may be income to the corporation, but it is not so to a stockholder till a dividend is made; and where the company invest it in buildings and machinery, or in railroad tracks, depots, rolling stock, or any other permanent improvements for enlarging or carrying on their legitimate business, it never becomes income to the shareholder."

In *Goodwin* v. *Hardy*,‡ a case in Maine, the court say:

" The stockholders have no claim to a dividend until it is declared.   Until that time it belongs to the corporation precisely as any other property it may own."

If these cases are good law they are decisive.

Apart from decisions, this is the only reasonable construction.   How can a stockholder be *entitled* to money which the corporation has used in paying off its debts?   The same principle applies to replacing wornout machinery, buying new, and purchasing raw material to carry on the business.

---

\* 26 Connecticut, 272.                    † 99 Massachusetts, 106, 111.

‡ 57 Maine, 143.

*Mr. Akerman, Attorney-General, and Mr. Bristow, Solicitor-General, contra :*

I. *As to the bar.*

1. The act of 1866 does not act retrospectively in barring this suit, for the suit was not brought until after it was passed.

2. It bars, by its terms, suits in "*any* court," and interpreted in accordance with its purposed meaning it is constitutional.*

3. The plaintiff had no vested right to recover by the principles of the common law the money illegally taken by the collector; for acts of Congress compelled the collector to pay the money immediately to the government. No promise can be implied to refund in such a case. The whole right to sue came by necessary implication from the revenue laws,† and the authority to sue could at any time be qualified or even taken away by Congress, which gave it.

II. *As to the merits.* It was the design of Congress to tax the *undivided* gains and profits made by all corporations, as well as those which are divided among the stockholders. This appears by considering the 117th section of the act of 1864 in connection with the 120th and 122d of the same act. The corporations mentioned in the 120th section are banks, trust companies, and insurance companies, and the tax is thereby made to cover not only "dividends," but also "all undistributed sums, or sums made or added during the year to their surplus or contingent funds." Those mentioned in the 122d section are railroad, canal, turnpike, canal-navigation, and slack-water companies; and the tax is thereby made to cover, not only gains and profits divided, but, in addition, "all profits of such company carried to the account of any fund or used for construction." All other corporations not specified in those sections are covered by the 117th section, which expressly declares that the gains and profits thereof shall be included in estimating the annual gains,

---

* Cary *v.* Curtis, 3 Howard, 254; Curtis *v.* Fiedler, 2 Black, 461.

† Philadelphia *v.* The Collector, 5 Wallace, 731.

profits, or income of any person entitled to the same, *whether divided or otherwise.*

The purpose is the same in each of these sections, the only difference being in the mode of effectuating it. Where the gains and profits are those made by a corporation specified in either the 120th or the 122d sections, the tax thereon is collected directly from the corporation, whether such gains and profits are divided or not. Where they are the gains and profits made by any corporation included in the 117th section, the tax thereon is collected directly from the stockholders, or persons entitled thereto, whether the same are divided or otherwise. In all cases the entire annual gains and profits of every corporation, divided or undivided, seem to be within the aim and purview of the statute as objects of taxation.

The decisions cited on the other side, if pertinent at all to the question of an income tax, which they are not, are not strong enough to control an enactment which includes "all gains and profits," "whether divided or *otherwise;*" that is to say, whether divided or undivided.

Mr. Justice CLIFFORD delivered the opinion of the court.

Suits to recover back moneys illegally exacted as internal revenue duties cannot, under existing laws, be commenced in the Circuit Courts, except in cases where the taxpayer and the defendant, whether the assessor or collector, are citizens of different State.. *  Such suits under any other circumstances must be commenced in the State courts, as the Circuit Courts have no jurisdiction to hear and determine the same, except when they are removed from a State court into the Circuit Court for the same district, on motion of the defendant.†   Where the parties are citizens of the same State the action must be brought in the State court, but the defendant, if he sees fit, and seasonably takes the proper steps, may remove the case into the Circuit Court for trial.‡

---

* Philadelphia *v.* The Collector, 5 Wallace, 728.

† Hornthall *v.* The Collector, 9 Id. 564.

‡ The Assessor *v.* Osbornes, Ib. 572.

Both parties in this case were citizens of the same State, and the action was accordingly commenced by the plaintiff in the State court, and the collector, as the defendant, not having taken any steps to remove the suit into the Circuit Court, the same was heard and determined in the State court in which it was commenced.

Taxes were assessed against the plaintiff, under the internal revenue laws, in the sum of one thousand five hundred and ninety-seven dollars, and the findings of the court show that the assessor duly returned his assessment list to the collector; that the collector demanded of the plaintiff the amount of the tax assessed, and that he threatened if the plaintiff refused to pay the same that he would coerce the collection of the whole amount; that the assessor gave due notice to the plaintiff when and where appeals from the assessment would be heard, but that the plaintiff did not appeal from the same, either to the assessor or to the Commissioner of Internal Revenue, and that he paid the whole amount of the assessment under protest.

Pursuant to the practice in that jurisdiction, the Superior Court reserved the questions of law arising upon the facts found, and the question what judgment ought to be rendered in the case, for the opinion and advice of the Supreme Court of Errors, and the record shows that the Supreme Court of Errors advised the Superior Court to render judgment for the plaintiff, as exhibited in the transcript of the record removed here by the writ of error for re-examination.

1. Remarks respecting the jurisdiction of the court to re-examine the judgment rendered by the State court may well be omitted, as the claim of the plaintiff as set forth in the declaration necessarily draws in question the acts of Congress imposing internal revenue duties and the authority exercised by the defendant in collecting the same, and the decision of the State court was against the validity of both, if the acts of Congress be construed as authorizing the assessment and collection of the duties.

2. Tried as the case was by the judge of the Superior Court, as a substitute for a jury, the Supreme Court of

Errors was bound to take the facts as found by that court, and this court in re-examining the judgment must proceed upon the same basis, as the finding of facts is made a part of the record.*

By the finding, it appears that at the time of the assessment the plaintiff owned a majority of the stock in two certain manufacturing corporations, whose affairs respectively were managed by three or more directors, of which the plaintiff was one; that the profits realized by the respective companies the year preceding the assessment was greater than the dividends which they made within the same period; that the profits at the time of the assessment had not been divided nor had they been in any way set apart from the general assets of the respective corporations, nor had they been appropriated for the use of the stockholders, otherwise than the law will imply from the fact of the existence of such profits; that the profits made by the respective corporations during that year were to such an amount that if the interest of the plaintiff therein was legally subject to the assessment the amount assessed and collected was the proper amount; that the plaintiff delivered, under oath, his list to the assistant assessor on the day of its date, omitting the amount now in controversy from the list; that the assessor required him to add the same to the list, which he declined to do, and that the same was then added to the list by the assessor; and the court also found that the assessment was legally made, if such profits were in law liable to such an assessment.

3. Such an amount of profits was made by the two corporations during that year that if the interest of the plaintiff therein was legally subject to any assessment it is conceded that the amount assessed and collected was correct, but the proposition is that the interest of the plaintiff in such profits was not legally subject to any such assessment, as it appears that the corporations invested the profits in part in real estate, machinery, and raw material proper for carrying on their

---

* Tancred *v.* Christy, 12 Meeson & Welsby, 323.

business, and in part for the payment of debts incurred in previous years, and that the same remained so invested at the time the duties were assessed and collected.  Part only of the profits of that year was so invested, and it was that part of the same which was not included in the dividends of the year, and which the plaintiff refused to add to the list he delivered to the assistant assessor, and which is now the subject of controversy.

4. Intention to defraud the government is not imputed, either to the corporations or to the plaintiff, unless the investment, in view of the circumstances, and the refusal of the plaintiff to add the proportional amount of the same to his list of annual gains and profits, constitute such fraud by implication of law; but the defendant contends that the plaintiff was required by law to pay the regular income tax on such proportion of the entire net profits made by the two companies as his stock bore to the whole stock of the corporations.

Apart from the defence to the merits of the claim, that the tax was lawfully assessed and collected, the defendant also set up in his notice of special matters to be given in evidence under the general issue that he paid over the amount to the Treasury of the United States before the suit was brought, and that the suit was barred by the nineteenth section of the act of Congress, entitled an act to reduce internal taxation, which provides, among other things, that no suit except under certain conditions not existing in the case before the court, shall be maintained *in any court* for the recovery of any tax alleged to have been erroneously or illegally assessed or collected until appeal shall have been duly made to the Commissioner of Internal Revenue, and a decision shall be had thereon, except in certain cases not material to be noticed in this investigation, as the case, if affected at all by the provision, falls within the rule and not within either of the exceptions.*

5. Payment of the amount into the public treasury before

---

* 14 Stat. at Large, 152; Braun *v.* Sauerwein, 10 Wallace, 218.

the suit was brought would be a good defence to the action if the right of the plaintiff depended solely upon an implied promise at common law, as the payment was made in pursuance of the requirement of an act of Congress, and the rule is well settled that the law will not imply a promise by a public officer to pay money in his hands as such officer twice, nor to pay it to a private party in a case where the law requires him to pay it into the public treasury, and he has complied with that requirement.* *Indebitatus assumpsit* is founded upon what the law terms an implied promise on the part of the defendant to pay what in good conscience he is bound to pay to the plaintiff. Where the case shows that it is the duty of the defendant to pay, the law imputes to him a promise to fulfil that obligation. Such a promise to pay, however, will never be implied unless some duty creates such an obligation, nor will the law ever imply a promise to do an act contrary to law or in violation of a public duty.†

Collectors of internal revenue, as well as collectors of import duties, are required to pay all moneys by them collected into the Treasury of the United States, and where such moneys have been collected and the payment has been made into the treasury as required by the act of Congress, the law, in the absence of any other statutory regulations upon the subject, would not imply any promise on the part of the collector to pay back the amount to the taxpayer, even if it appeared that the assessment was erroneous or illegal, as he could not, in such a case, be under any obligation to pay the money twice, and to have paid it back to the taxpayer in the first place would have been contrary to his official duty as prescribed by an act of Congress. But the right of the plaintiff to recover in such a case, if the tax is illegal and he is not otherwise in fault, does not depend alone upon an implied promise as at common law, as the same act of Congress which requires the collector to collect the tax and pay the money into the public treasury, contains .

---

\* 13 Stat. at Large, 236 ; 13 Id. 485 ; Cary *v.* Curtis, 3 Howard, 250.

† Curtis *v.* Fiedler, 2 Black, 478.

other provisions from which the implication necessarily arises that the taxpayer in such a case, if the tax is illegal, may maintain an action against the collector to recover back the amount. Much examination of that question, however, is unnecessary at this time, as the rule upon the subject is definitely settled by prior decisions of this court.*

Such a defence, therefore, cannot avail the defendant in this cause, as the right of action, though in form an action of assumpsit, is grounded upon the act of Congress providing for the assessment and collection of taxes, which will sufficiently appear from a single suggestion. None of the internal revenue acts contemplate that the collectors shall reimburse themselves for the amount of any judgment recovered against them on account of duties illegally or erroneously assessed and collected. On the contrary, the act of Congress expressly provides that the Commissioner of Internal Revenue shall repay to collectors or deputy collectors the full amount of such sums of money as shall or may be recovered against them in any court for any internal duties or licenses collected by them, with the costs and expenses of suit.†

6. Prior to the passage of the act of the 13th of July, 1866, it is quite clear that the taxpayer, if he was illegally assessed, might maintain an action of assumpsit against a collector to recover back the amount, if he paid it under protest, although he had not taken any appeal to the Commissioner of Internal Revenue.‡ Such were the views of this court in the case of *Philadelphia* v. *The Collector*,§ and no doubt is entertained that the decision was entirely correct, but it is a great mistake to suppose that the right to maintain the action, as there conceded, was founded in the theory that the collector held money in his hands belonging to the plaintiff which he was bound to refund, as the

* Philadelphia v. Collector, 5 Wallace, 731; Curtis v. Fiedler, 2 Black, 479; 13 Stat. at Large, 236, 239.

† 13 Stat. at Large, 239.

‡ Philadelphia v. Collector, 5 Wallace, 730; 14 Stat. at Large, 152.

§ 5 Wallace, 730.

decision was placed expressly upon the ground that the several provisions in the internal revenue acts, before referred to, warranted the conclusion as a necessary implication that Congress intended to give the taxpayer such remedy.

Remedies of the kind, given by Congress, may be changed or modified, or they may be withdrawn altogether at the pleasure of the law-maker, as the taxpayer cannot have any vested right in the remedy granted by Congress for the correction of an error in taxation.*

Suits for such causes of action are absolutely prohibited until the taxpayer shall appeal to the Commissioner of Internal Revenue, and until the appeal has been decided, unless the decision is postponed longer than six months, in which case he is at liberty to sue within one year from the time when his appeal was taken.†

Three answers are made by the plaintiff to that defence, as presented in the record: (1.) He contends that the provision is prospective, and that Congress did not intend that it should retroact so as to affect a vested right.  (2.) That the act of Congress in question, even if it is a bar to such a suit in a Federal court, is inoperative, as such, in a State court.  (3.) That the money paid for the taxes, inasmuch as it was paid under protest, must be considered as money in the hands of the defendant belonging to the plaintiff, and that the plaintiff in that view of the case has a vested right at common law to his remedy to recover it back.

Pending suits, it may be conceded, are not affected by that provision, but it is impossible to say that any suit subsequently commenced for such a cause of action is not embraced within its scope and meaning, as the language is, "No suit shall be maintained *in any court* for the recovery of any tax alleged to have been erroneously or illegally assessed or collected, until appeal shall have been duly made to the Commissioner of Internal Revenue," &c., as more fully set forth in the section.  Authority was vested in the commis-

---

* Curtis *v.* Fiedler, 2 Black, 479.

† Nichols *v.* United States, 7 Wallace, 130; Braun *v.* Sauerwein, 10 Id 218.

sioner by the prior act to remit, refund, and pay back, " *on appeal to him made,*" all duties erroneously or illegally assessed or collected, and all duties that appeared to be unjustly assessed or excessive in amount.*

Appeals were permitted by that act, though not required as a condition to a right of action, but inasmuch as the right of appeal and the right of action were conferred by the same act, the court is of the opinion that it was entirely competent for Congress to add new conditions to the exercise of that right whenever in its discretion the public interest might require such additional regulation. Unless the meaning of the section can be restrained by construction it is quite clear that it includes the State courts as well as the Federal courts, as the language is that no suit shall be maintained *in any court* to recover any tax alleged to have been erroneously or illegally assessed or collected, and there is not a word in the section tending to show that the words "in any court" are not used in their ordinary sense. Unquestionably if the provision is a good bar in the Federal courts, it is a good bar in all courts acting under the same act of Congress, and furnishes the rule of decision for all.†

Special reference is made to the fact that a prior suit was commenced by the plaintiff, which was pending in the Circuit Court at the time the act was passed taking away the original jurisdiction of the Circuit Courts in all such cases, except where the parties are citizens of different States, but the only answer which need be made to that suggestion is that the present suit is wholly unaffected by that circumstance.

Regulations exist in some of the States that where the first suit is abated and a second suit is brought within a prescribed time the statute of limitations shall cease to run from the date of the first suit, but Congress has not passed any law to that effect, and it is conceded that none such exists in the State where the suit was commenced.

Sufficient has already been remarked to show that the

---

* 13 Stat. at Large, 239.　　　　† Cary *v.* Curtis, 3 Howard, 254.

third proposition of the plaintiff cannot be sustained, as a party cannot have any vested right in a remedy conferred by an act of Congress to prevent Congress from modifying it or adding new conditions to its exercise.

7. Suppose, however, that the rule is otherwise, that the provision in question is not a bar to the present suit, still the court is of the opinion that the addition made to the list rendered by the plaintiff was proper, that the tax was lawfully assessed, and that the plaintiff is not entitled to recover in this case.

Assessed as the duties in this case were under the act of the thirtieth of June, 1864, attention will be called chiefly to the provisions of that act. Congress evidently intended by that act, as appears by the one hundred and sixteenth, and the six following sections, to tax all the annual gains, profits, and income of every person residing here, and of every citizen residing abroad, whether derived from any kind of property, rents, interests, dividends, salaries, or from any profession, trade, employment, or vocation, or from any other source whatever, except as therein mentioned, if such annual gains, profits, or income exceed six hundred dollars. Section one hundred and seventeen declares what shall be included in estimating the annual gains, profits, or income of any person, and, among other things, expressly provides that the gains and profits of all companies, whether incorporated or partnership, other than the companies specified in that section, shall be included in estimating the annual gains, profits, or income of any person, entitled to the same, *whether divided or otherwise.**

Manufacturing companies are not mentioned in that section, and of course they fall within that clause of the section which in terms applies to all companies, whether incorporated or partnership, not specified in that section. Lists or returns of the amount of income are required by section one hundred and eighteen, and section one hundred and nineteen prescribes the time of payment and defines the penalty in case of neglect and refusal.

* 13 Stat. at Large, 282.

Support to the view that the list of an individual should include undivided as well as divided profits is derived from the requirements of the one·hundred and twentieth section, which levies a duty of five per centum on all dividends in scrip or money thereafter declared due, whenever the same shall be payable to stockholders, policy-holders, or depositors, as part of the earnings, income, or gains of certain described companies, not including manufacturing companies, and on all undistributed sums, or sums made or added during the year, to their surplus or contingent funds. Strong confirmation of that view is also derived from section one hundred and twenty-one of the same act, which requires banks of circulation, if they neglect to make dividends, or additions to their surplus or contingent fund, as often as once in six months, to make a list or return in duplicate of the amount of profits which have accrued or been earned within that period, and to present the list or return to the collector of the district and pay to him five per cent. on such profits.*

Substantially the same requirement is made of every railroad, canal, turnpike, canal-navigation and slack-water company, and the provision is that all profits of such a company carried to the account of any fund or used for construction shall be subject to and pay a duty of five per centum on the amount of all such profits.† Other references to the same effect might be made, but it is believed that these are sufficient to show that the policy of Congress in that act was to tax all gains and profits, whether divided or undivided, and that the construction that the undivided gains and profits of manufacturing companies are properly included in that rule is just and reasonable.

Decided cases are referred to,‡ in which it is held that a stockholder has no title for certain purposes to the earnings, net or otherwise, of a railroad prior to the dividend being

---

\* 13 Stat. at Large, 284.                   † 13 Id. 284, § 122.

‡ Minot v. Paine, 99 Massachusetts, 106; Goodwin v. Hardy, 57 Maine, 145.

declared, and it cannot be doubted that those decisions are correct as applied to the respective subject-matters involved in the controversies.   Grant all that, still it is true that the owner of a share of stock in a corporation holds the share with all its incidents, and that among those incidents is the right to receive all future dividends, that is, his proportional share of all profits not then divided.   Profits are incident to the share to which the owner at once becomes entitled provided he remains a member of the corporation until a dividend is made.*   Regarded as an incident to the shares, undivided profits are property of the shareholder, and as such are the proper subject of sale, gift, or devise.   Undivided profits invested in real estate, machinery, or raw material for the purpose of being manufactured are investments in which the stockholders are interested, and when such profits are actually appropriated to the payment of the debts of the corporation they serve to increase the market value of the shares, whether held by the original subscribers or by assignees.   But the decisive answer to the proposition is that Congress possesses the power to lay and collect taxes, duties, imposts, and excises, and it is as competent for Congress to tax annual gains and profits before they are divided among the holders of the stock as afterwards, and it is clear that Congress did direct that all such gains and profits, whether *divided or otherwise*, should be included in estimating the annual gains, profits, or income liable to taxation under the provisions of that act.   Annual gains and profits, whether divided or not, are property, and, therefore, are taxable.

JUDGMENT REVERSED with costs and the cause remanded for further proceedings

IN CONFORMITY TO THE OPINION OF THIS COURT.

* March *v.* Railroad, 43 New Hampshire, 520.