Howry, J.,
delivered the opinion of the court:
This is an action to recover the amount of an allowance made by the Commissioner of Internal Revenue on the application of plaintiff .for a refund of internal-revenue taxes, including penalty and interest. The tax was assessed under that provision of the act of June 13, 1898 (30 Stat. L., 418), which provides as follows:
“Mortgage or pledge of lands, estate, real or personal, heritable or movable, whatsoever, where the same shall be made as a security for the pajunent of anjr definite and cer - tain sum of money, lent at the time or previously due and owing or forborne to be paid, being payable; also, any con-vejmnce of any lands, estate, or property whatsoever in trust, to be sold or otherwise converted into money, which shall be intended onty as security, .either by express stipulation or otherwise, on any of the foregoing exceeding one thousand dollars and not exceeding one thousand five hundred dollars, twenty-five cents; and on each five hundred dollars or fractional part thereof in excess of fifteen hundred dollars, twenty-five cents.”
It appears that on or about October 1, 1898, plaintiff executed its first consolidated mortgage to secure an issue or issues of bonds to an amount which should in no event exceed, when taken together with the amount' at any time outstanding of existing first-mortgage bonds of the company, the amount of the paid-up capital stock of the company at the time of issuing bonds, or an amount equal to two-thirds of the value of the corporate propert}1, in case such two-thirds value should bo more than the amount of the paid-up capital stock and which should in no event exceed the sum of $10,000,000.
By the terms of the mortgage it was provided that, at the time of the execution of the mortgage, bonds were to be issued not to exceed $2,000,000, and that no further issue of bonds was to bo made, except for betterments which might thereafter be made to the property of the company, until October, 1900, when $1,800,000 of bonds were to be issued to redeem certain first-mortgage bonds. The balance of the bonds, not exceeding $6,200,000, were to be issued for betterments if and when made. At the time of the execution of the mortgage and the issuing of the $2,000,000 bonds therein provided for, being a time prior to February 28,1899, internal-revenue *223 stamps of the value of $999.50 were affixed, that being the proper amount of tax on $2,000,000, the sum then secured by the mortgage. Subsequently, but before the additional $1,800,000 or any further bonds were issued, and under a decision made by the Commissioner of Internal Revenue that the mortgage should have been stamped on the basis of $10,000,000, the company was assessed an additional tax of $4,000, which sum, together with $242 penalty and interest, was collected from the company by distraint. Upon petition to the Commissioner of Internal Revenue asking a refund of the sum so distrained the Commissioner decided under section 3220 and the regulations prescribed by the Secretary of the Treasury September 26, 1899 (pursuant to the statute), which were duly complied with, that the amount collected by distraint should be refunded. This amount was certified to the Treasury Department, where payment of the sum so awarded was refused on the ground that the assessment had been properly made. Thereupon this action was instituted.
Section 3220 of the Revised Statutes provides that—
“The Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, is authorized, on appeal to him made, to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected.” * * *
We take the view that any doubts as to our jurisdiction to entertain the claim on the allowance arising under the decision in the case of Nichols v. United States (7 Wall., 122) have been settled in at least two cases. In United States v. Kaufman (96 U. S., 567) the question of jurisdiction upon the allowance of a claim by the Commissioner of Internal Revenue under the authority of a statute similar to that under which the present allowance rests arose upon the appeal of the United States from the decision of this court where it appeared that the Commissioner had made an award and judgment was rendered by this .court for the amount.
In affirming the judgment the Supreme Court explained the reason why the Court of Claims did not have jurisdiction of a suit to recover back duties upon imported goods illegally *224 assessed, saying that the same rule applied to internal-revenue cases where the decision of the Commissioner upon appeal was adverse to claimants. In such cases the appellate court said a special remedy is given by suit against the collector if the necessary steps are taken to secure the right to sue at all. But that was not Kaufman’s ease. There the claim had been presented to and allowed by the proper officer, and the court drew the distinction between an action on the allowance of this officer and those cases where the special remedy was given against the collector. The reason assigned was that where the. liability is created by statute the special remedy provided by the same statute is exclusive. Taking up the question at issue, the right of the party obtaining an allowance to make it the basis of a suit in the Court of Claims and the jurisdiction of the court to entertain the complaint, Chief Justice Waite said:
“The claimant has pursued the statutory remedj'- to the end. He is satisfied with the decision that has been given and insists upon the payment which the Government has undertaken to make. Ko special remedy has been provided for the enforcement of the payment, and consequently the general laws which govern the Court of Claims may be resorted to for relief, if any can be found applicable to such a case. This is upon the principle that ‘a liability created by statute without a remedy may be enforced by an appropriate common-law action.’ (Pollard v. Bailey, 20 Wall., 527.)
“It is now insisted that the finding of an allowance bjr the Commissioner is not enough, and that the court should have gone behind the allowance and found the facts in respect to the original claim. Such, we think, is not the law. To say the least, the allowance of a claim under this statute is equivalent to an account stated between private parties, which is good until impeached for fraud or mistake. It is not the allowance of an ordinary claim against the Government bjr an ordinary accounting officer, but the adjudication by the first tribunal to which the matter must by law be submitted. Until so submitted, and until so adjudicated, there is not even a prima facie liability of the Government; but when submitted, and when allowed upon the adjudication, the liability is complete until in some appropriate form it is impeached. When, therefore, the court found the adjudication against the Government, without impeachment, the liability to pa}T ivas established. We do not decide that in the Court of Claims *225 the adjudication of the Commissioner may not be impeached, but we do decide that, until impeached, it is binding, and that the affirmative of the impeachment is upon the Government.”
In United States v. Savings Bank (104 U. S., 728) payment was refused to a plaintiff whose claim had in due time been presented on appeal to and allowed by the Commissioner of Internal Revenue. In approving the principles declared in the Kaufman case the court said:
“We can not discover any material difference between the powers of the Commissioner under section 3426 and those which he has under section 3220. Under section 3426 he is to ‘allow’ the claim, which is done either by giving other stamps in lieu of those that have been spoiled, etc., or by refunding the amount or value. Under section 3220 he is to ‘refund’ or ‘pay back.’ His payments of money in both cases must be made through the accounting officers of the Treasury Department, as he is not himself a disbursing officer. Whether his allowance is conclusive on the other officers, through whose hands it must necessarily pass before it can be paid by the Treasurer, we did not then and need not now decide. All we said then, and all we say noiv, is that if payment is not made by reason of the refusal of any of the officers of the Department to pass or pay the claim after it has once been allowed by the Commissioner, the allowance may be used as the basis of an action against the United States in the Court of Claims, where it will b q prima facie evidence of the amount that is due, and put on the Government the burden of showing fraud or mistake. This burden is not overcome ly proving that some other officer in the subsequent progress of the claim through the Department declined to do what the law or the Treasury regulations required of him before payment could be obtained. The fact of fraud or mistake must be established by competent evidence, the same as any other fact in issue. An allowance by the Commissioner in this class of cases is not the simple passing of an •ordinary claim by an ordinary accounting- officer, but a statement of accounts by one having authority for that purpose under an act of Congress. Until an appeal is taken to the Commissioner no suit whatever can be maintained to recover back taxes illegally assessed or erroneously paid. If on the appeal the claim is rejected, an action lies against the collector (Rev. Stat., sec. 3226), and through him, on establishing the error or illegality, a recovery can be had. If the claim is allowed, and payment for any cause refused, suit may be brought directly against the Government in the Court of *226 Claims. This, it seems to us, is the logical result of the legislation of Congress upon the subject. A rejected claim may be prosecuted against the collector, and an allowed claim, not paid, may be sued for in the Court of Claims.”
But it is contended for the defendants that a distinction between the effect of findings of fact and the conclusions arising from the facts found has since been drawn, the conclusiveness of the action of the Commissioner being restricted to the facts before him and not to deductions drawn from the facts resulting in his official award. (Medbury v. United States, 173 U. S., 492.)
Medbury’s claim arose under the act of June 16, 1880 (21 Stat. L., 287). That act provides for repayment of money theretofore paid where public lands have been entered and where the entry is subsequently canceled for conflict, or where such entry was originally erroneous but can not be confirmed, or where parties have paid double minimum price for lands afterwards found not to be within the limits of a railroad land grant. Section 3 of the act authorizes the Secretary of the Interior to cause repajunent to be made in certain cases out of any money in the Treasury not otherwise appropriated. Application having been made to the Secretary for the repayment of the excess price where the party claimed to have paid double minimum price for land after-wards found not to be within the limits of a railroad land grant, and payment having been refused, suit was brought to recover the excess. In affirming the judgment of this court and dismissing the petition on its merits, the Supreme Court held that the claim was one which this court had jurisdiction to determine— a view which this court had not taken in the matter of jurisdiction.
In delivering the opinion of the court, Mr. Justice Peck-ham says of the act of 1880:
“The question then arose as to the remedy, and you look in vain for any in the act itself.”
By this Mr. Justice Peckham undoubtedly means a judicial remedy.
The act 13th July, 1866 (14 Stat. L., 152), now Revised Statutes, section 3226, provides for internal-revenue cases *227 like this a judicial remedy. (The Collector v. Hubbard, 12 Wall., 8.) This grant of á judicial remedy to such claimants constitutes what the Supreme Court calls in Nichols case “a system,” containing an exclusive jurisdiction. It also constitutes a substantial distinction between the decision in Med-bury and Kaufman. In the one class of cases this court can review the decision of the Secretary of the Interior upon the law if not upon the facts; in the other the decision of the Commissioner of Internal Revenue, if adverse to the claimant, can be reviewed in other tribunals and, if favorable to the claimant, is final unless it be impeached. Its correctness can not be reviewed either by the accounting officers or by the courts.
It was made clear that Congress did not intend, in cases arising under the act of 1880, to make the decision of the Secretary of the Interior final. The reason given by the court carries the explanation. The act creating the right did not supply the remedy.
Section 3220 furnishes a complete scheme by which the Commissioner of Internal Revenue under Treasury regulations is made an appellate functionary to remit, refund, and pay back all taxes erroneously or illegally assessed or collected and all penalties collected without authority. It goes further. The Commissioner is authorized to remit, refund, and pay back, taxes that appear to be unjustly assessed or excessive in amount or in any manner wrongfully collected. His functions are not intermediate like those of a collector who maj1- levy an unjust tax and refuse to remit its paj'ment, or like those of the Secretary of the Interior under the act of June 16,1880, who majr refuse repayment, but whose decision is not final. It was the allowance which the court declared in Kaufman (and reaffirmed in Bank) was not open to review.
The allowance in the present case must be treated as a lawful demand; an award all sufficient for the foundation of a judgment. The award is not impeached for fraud in procuring it nor for mistake of fact in making it. Judgment will therefore be entered for plaintiff in the amount of the tax, together with penalty and interest found due by the award.