**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA
            *Plaintiff-Appellee,*

            v.

$6,190.00 IN U.S. CURRENCY;
$67,690.80 IN U.S. CURRENCY;
$18,336.59 IN U.S. CURRENCY;
$26,478 IN U.S. CURRENCY;
$20,000 IN U.S. CURRENCY; $6,255
IN U.S. CURRENCY,

            *Defendants,*

            and

MAXIM LAM,
            *Claimant-Appellant.*

No. 08-35221

D.C. No.
04-CV-00245-MA

OPINION

Appeal from the United States District Court
for the District of Oregon
Malcolm F. Marsh, District Judge, Presiding

Argued and Submitted
May 8, 2009—Portland, Oregon

Filed September 8, 2009

Before: William A. Fletcher, Carlos T. Bea and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge William A. Fletcher

## COUNSEL

Amy Potter, Leslie Jauanna Westphal, Robert David Nesler, OFFICE OF THE UNITED STATES ATTORNEY, Portland, Oregon, for the appellee.

Stephen R. Sady, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Portland, Oregon, for the appellant.

## OPINION

W.   FLETCHER, Circuit Judge:

Maxim Lam is a fugitive from an Oregon state criminal proceeding. Before the state proceeding began, the federal government filed a civil forfeiture complaint under 28 U.S.C. § 1355 against assets allegedly traceable to the criminal activity charged in the state court proceeding. After it became apparent that Lam had become a fugitive, the federal district court, acting under 28 U.S.C. § 2466, struck Lam's claim to his assets in the civil forfeiture proceeding. Through an attorney, Lam appeals. He argues, first, that the district court lacked jurisdiction over the civil forfeiture action under § 1355 and, second, that § 2466 does not apply to fugitives from state criminal proceedings.

We affirm the district court.

## I.  Background

The federal government contends that Lam participated in a scheme, in violation of 8 U.S.C. § 1324(a), that helped illegal aliens procure Oregon driver's licenses. Section 1324(a) criminalizes harboring or bringing illegal aliens into the United States. On February 20, 2004, the government filed a civil forfeiture complaint in federal district court under 28 U.S.C. § 1355 against assets allegedly traceable to Lam's scheme. The district court issued a warrant for arrest *in rem* and seizure.

A month later, the federal government obtained an indictment against Lam. It charged him with ten counts of encouraging aliens to reside in the United States unlawfully, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), by facilitating their unlawful acquisition of Oregon driver's licenses. The government then filed an amended civil forfeiture complaint specifying additional assets seized from Lam's home and his safe deposit box. The amended complaint was supported by an affidavit from Glenn Watson, a Special Agent with the United States Immigration and Customs Enforcement Service, who investigated the driver's license scheme. The court issued an amended warrant for arrest *in rem* and seizure. It held that there was probable cause to believe that the assets were traceable to violations of 8 U.S.C. § 1324(a) and were therefore subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

On May 4, 2004, Lam filed a claim for the assets specified in the amended complaint. On June 9, 2004, the district court stayed the forfeiture proceeding pending the outcome of the federal criminal case against Lam. On September 27, 2004, an Oregon grand jury handed up an indictment against Lam, charging him with 101 counts of violating Oregon law. The indictment was based on the same scheme that gave rise to the federal indictment and the federal civil forfeiture action. On May 31, 2005, the district court dismissed the federal indict-

ment without prejudice pending resolution of the Oregon criminal proceeding.

Lam entered a plea of not guilty in the Oregon criminal proceeding. The Oregon court released him on his own recognizance. Lam appeared at two conferences on June 27 and June 30, 2005, but on February 3, 2006, three days before his trial was scheduled to begin, he failed to appear for a pre-trial call. The state court issued a warrant for his arrest. That warrant is still outstanding.

On September 7, 2007, based on Lam's fugitive status, the federal government moved to lift the stay in its civil forfeiture action. The district court lifted the stay on November 20, 2007. The next day, the government moved to strike Lam's claim for his assets under the fugitive disentitlement doctrine, codified at 28 U.S.C. § 2466. The district court granted the government's motion.

The district court held that it had subject matter jurisdiction over the civil forfeiture action under 28 U.S.C. § 1355. The court held that Lam need not have been convicted of the charges in the federal indictment for the court to have jurisdiction. Instead, it wrote that its jurisdiction was "rooted in the probable cause determination that the acts or omissions that gave rise to this action violated federal law, and occurred within the District of Oregon."

The court further held that 28 U.S.C. § 2466 applied to Lam's claim to his seized assets. The court held that Lam met the requirements for fugitive disentitlement under § 2466, as articulated in *Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004). The court held further that Lam's claim was subject to § 2466 even though he was a fugitive from a state, rather than a federal, criminal proceeding. Pursuant to § 2466, the court granted the government's motion to strike Lam's claim to the seized assets.

Lam timely appealed.

## II.  Standard of Review

We review de novo a district court's determination of subject matter jurisdiction. *Moe v. United States*, 326 F.3d 1065, 1067 (9th Cir. 2003). We also review de novo legal questions arising under § 2466, including a district court's determination of probable cause. *United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1164 (9th Cir. 2008). We review for abuse of discretion a district court's decision to order disentitlement under § 2466. *Collazos v. United States*, 368 F.3d 190, 195 (2d Cir. 2004).

## III. Discussion

Lam argues that the district court did not have subject matter jurisdiction over the civil forfeiture action under § 1355. He also argues that § 2466 does not apply to a fugitive from a state court criminal proceeding. For the reasons that follow, we reject both arguments and affirm the district court.

### A.  Subject Matter Jurisdiction

Lam argues that the district court lacked subject matter jurisdiction over the forfeiture action for two reasons. First, he argues that Congress limited jurisdiction under 28 U.S.C. § 1355 to matters involving specified violations of federal law, and that 8 U.S.C. § 1324 is not one of these specified violations. Second, he argues that even if the district court had jurisdiction over forfeitures involving violations of § 1324, the federal indictment failed to allege a violation of this statute. In particular, Lam argues that the indictment did not allege mens rea or a nexus to immigration, which, Lam contends, are elements of the crime. We address these arguments in turn.

[1] First, the district court's subject matter jurisdiction is based on 28 U.S.C. § 1355(a), which provides, "The district

courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress . . . ." The forfeiture statute upon which the government relies is 18 U.S.C. § 981, which authorizes civil forfeiture of the proceeds of activities that violate certain federal laws. Section 981(a)(1)(C) provides, "The following property is subject to forfeiture to the United States . . . . Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."

**[2]** "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) as "any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31."[1] Section 1961(1)(F) includes in its list of offenses "any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens) . . . if the act indictable under such section of such Act was committed for the purpose of financial gain." Section 274 of the Immigration and Nationality Act is codified at 8 U.S.C. § 1324. Therefore, contrary to Lam's argument, Congress authorized federal jurisdiction over forfeiture actions for proceeds of a violation of § 1324, if that violation was for financial gain. Lam does not contest that he was accused of violating § 1324 for financial gain. Therefore, the district court properly exercised subject matter jurisdiction over this action.

**[3]** Second, Lam claims that the indictment in his federal proceeding does not allege a crime under § 1324 and therefore

---

[1]Subchapter II of chapter 53 of title 31 requires certain institutions and individuals to file records and reports on monetary instrument transactions. *See* 31 U.S.C. § 5311. It is inapplicable to this case.

cannot serve as a basis for subject matter jurisdiction in his civil forfeiture proceeding. We do not need to decide whether the indictment is deficient. Jurisdiction over civil forfeiture actions brought under 28 U.S.C. § 1355 is not premised on a federal indictment, but rather on a violation of an Act of Congress. *See* 28 U.S.C. § 1355(a); *see also United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361-63 (1984) (holding that a claimant's assets were subject to forfeiture even though claimant was acquitted on federal criminal charges). To bring a civil forfeiture proceeding under § 1355, the government is required only to show probable cause that the assets in question are traceable to a violation of an Act of Congress. *See $493,850.00 in U.S. Currency*, 518 F.3d at 1167-69 (holding that the Civil Asset Forfeiture Reform Act of 2000 did not alter the probable cause requirement). The district court properly held that the government's complaint, accompanied by the affidavit of Special Agent Watson, met this requirement.

## B. Fugitive Disentitlement Statute

Lam next argues that the district court erred by striking his claim under 28 U.S.C. § 2466. Whether the federal disentitlement statute applies to fugitives from state criminal proceedings is an issue of first impression. For the reasons that follow, we hold that § 2466 applies to state criminal proceedings.

### 1. Background of the Fugitive Disentitlement Statute

**[4]** The fugitive disentitlement doctrine prohibits an individual from using the courts to further one claim while avoiding the courts' jurisdiction on another matter. Congress enacted the fugitive disentitlement statute as part of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), codifying what had been common law doctrine in some lower federal courts. The doctrine had allowed appellate courts, based on their inherent authority, "to dismiss an appeal or writ in a

criminal matter when the party seeking relief becomes a fugitive." *Degan v. United States*, 517 U.S. 820, 823 (1996) (citing *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993)). Some courts had extended the doctrine to civil forfeiture suits, entering judgment against defendants/claimants in those suits who were fugitives from related criminal prosecutions. *See, e.g.*, *United States v. Real Property Located at Incline Village*, 47 F.3d 1511, 1517-18 (9th Cir. 1995); *United States v. Eng*, 951 F.2d 461, 465-66 (2d Cir. 1991). In *Degan v. United States*, the Supreme Court rejected this extension, holding that federal courts did not have the inherent authority to disentitle fugitives' claims in civil forfeiture actions. 517 U.S. at 821. The Court left the door open to a fugitive disentitlement statute, noting that it "need not, and d[id] not, intimate a view on whether enforcement of a disentitlement rule under proper authority would violate due process." *Id.* at 828.

Congress responded by enacting the fugitive disentitlement provision of CAFRA, codified at 28 U.S.C. § 2466. Section 2466 provides, in relevant part,

> (a) A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person—
>
>> (1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution—
>>
>>> (A) purposely leaves the jurisdiction of the United States;

(B) declines to enter or reenter the United States to submit to its jurisdiction; or

(C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and

(2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.

28 U.S.C. § 2466(a).

**[5]** Only the Second and D.C. Circuits have published opinions reviewing a district court's application of § 2466.[2] *See United States v. $6,976,934.65, Plus Interest Deposited into Royal Bank of Scotland Int'l, Account Number 2029-56141070, Held in the Name of Soulbury Ltd.* ("$6,976,934.65"), 554 F.3d 123 (D.C. Cir. 2009); Collazos, 368 F.3d 190. Both circuits have adopted the following five-element test for determining whether a fugitive may be disentitled: (1) a warrant or similar process must have been issued in a criminal case for the claimant's apprehension; (2) the claimant must have had notice or knowledge of the warrant or process; (3) the criminal case must be related to the forfeiture action; (4) the claimant must not be confined or otherwise held in custody in another jurisdiction; and (5) the claimant must have deliberately avoided criminal prosecution by leaving the United States, declining to enter or reenter the country, or otherwise evading the criminal court's jurisdiction. *$6,976,934.65*, 554 F.3d at 128; *Collazos*, 368 F.3d at 198.

---

[2]The Eleventh Circuit affirmed a district court's dismissal of a fugitive's claim in a civil forfeiture proceeding under § 2466 in an unpublished disposition. *See U.S. v. $343,726.60 in U.S. Currency seized from Scottrade Account No. 81733422*, 271 F. App'x. 972 (11th Cir. 2008) (unpublished disposition).

Following the lead of our sister circuits, we now adopt this five-element test.

Section 2466 does not mandate disentitlement once these five elements have been satisfied. Rather, it provides that "[a] judicial officer *may* disallow a person from using the resources of the courts of the United States." 28 U.S.C. § 2466 (emphasis added). We agree with the Second Circuit that "the ultimate decision whether to order disentitlement in a particular case rests in the sound discretion of the district court." *Collazos*, 368 F.3d at 198.

### 2.    Application of § 2466 to Fugitives from State Proceedings

Lam argues that § 2466 applies only to claimants who are fugitives from federal criminal proceedings. Since he is a fugitive from a state criminal proceeding, he argues, his claim to his assets in the civil forfeiture proceeding does not satisfy the fifth element of the test. Therefore, he argues, his claim should not have been struck pursuant to § 2466.

Lam does not dispute the district court's determination that he met § 2466's remaining requirements. Nor does Lam assert that, if § 2466 covers fugitives from state criminal proceedings, the district court abused its discretion by striking Lam's claim. Therefore, the only issue before us is whether § 2466 applies to fugitives from state proceedings. We hold that it does.

**[6]** The text of § 2466 is clear. The introductory paragraph of § 2466(a) disallows certain persons from using the resources of "the courts of the United States" in furtherance of a claim in a civil forfeiture action. Section 2466(a) then goes on to describe those persons. They include a person who "purposely leaves the jurisdiction of the United States," § 2466(a)(1)(A); a person who "declines to enter or reenter the United States to submit to its jurisdiction,"

§ 2466(a)(1)(B); and a person who "otherwise evades the jurisdiction of *the court* in which a criminal case is pending against the person," § 2466(a)(1)(C) (emphasis added). The question before us is whether the word "court" in § 2466(a)(1)(C) refers only to a federal court, or whether it refers to both state and federal courts.

**[7]** We first note that in the introductory paragraph to § 2466(a), the statute describes the courts in which the civil forfeiture proceeding is brought as "the courts of the United States," thus making clear that § 2466 concerns only forfeiture suits brought in federal court. Then, in § 2466(a)(1)(C), Congress, seemingly *ex industria*, drops the qualifier "of the United States" in referring to the court from which the claimant is a fugitive. The omission of the qualifier strongly suggests that "court" in § 2466(a)(1)(C) has a broader meaning than "courts of the United States" in § 2466(a).

**[8]** We next note that in § 2466(a)(1)(B) and (C) the phrase "United States" is also used, referring to the "jurisdiction" of the United States. Here, it is obvious that the phrase "jurisdiction of the United States" does not refer to the subject matter jurisdiction of the United States courts, but rather to the jurisdiction of the United States as a political entity. We therefore regard the use of the phrase "United States" as not having great bearing on the omission of that same phrase in § 2466(a)(1)(C), except as it might suggest that the scope of the fugitive disentitlement statute extends generically to anyone who flees or refuses to enter the United States in order to evade criminal prosecution.

Finally, we note that if Congress had intended to limit the operation of § 2466(a)(1)(C) to fugitives from federal court criminal proceedings, it could easily have done so. For example, it could have written § 2466(a)(1)(C) to refer to a person who "evades the jurisdiction of the *United States* court," or to a person who "evades the jurisdiction of the court in which a *federal* criminal case is pending." (Emphasis indicates words

not in the text.) But Congress did not do so. Instead, the statute reads simply "the court in which a criminal case is pending," strongly suggesting that the court to which it refers is any court in the United States, whether federal or state.

Lam argues that because Congress failed to use the word "any" in § 2466(a)(1)(C), it did not intend the word "court" to include a state court. Lam is correct that the word "any" has been interpreted to include federal, state, and even local institutions. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("any other term of imprisonment" means state or federal imprisonment); *United States v. Averz-Sanchez*, 511 U.S. 350, 358 (1994) ("any law-enforcement officer" means a federal, state, or local officer); *Collector v. Hubbard*, 79 U.S. 1, 10 (1870) ("any court" means state or federal court). However, the foregoing shows only that the use of the term "any" can indicate an intention to include state as well as federal institutions. It does not show that the use of the word "any" is necessary to indicate that both federal and state institutions, including courts, are intended where the meaning is otherwise clear.

### Conclusion

**[9]** We hold that the district court had jurisdiction over the government's civil forfeiture action under 28 U.S.C. § 1355(a). We hold further that 28 U.S.C. § 2466(a) applies to fugitives from both state and federal criminal proceedings. We therefore affirm the district court's order striking Lam's claim to his seized assets.

AFFIRMED