## UNITED STATES ex rel. COATES v. ST. LOUIS CLAY PRODUCTS CO. et al.

### No. 2299.

District Court, E. D. Missouri, E. D.

April 29, 1946.

646

See also 3 F.R.D. 289.

Sonnenschein, Berkson, Lautmann, Levinson & Morse and I. E. Ferguson, all of Chicago, Ill., and John L. Gilmore and Wm. R. Gentry, both of St. Louis, Mo., for plaintiff.

A. J. Haverstick and C. Arthur Anderson, both of St. Louis, Mo., for defendant St. Louis Clay Products Co.

C. Arthur Anderson, of St. Louis, Mo., for defendant E. T. Davenport.

Samuel H. Liberman, of St. Louis, Mo., and Kenneth C. Miller, of Brazil, Ind., for defendant Arketex Ceramics Corporation.

Lashly, Lashly, Miller & Clifford, Jacob M. Lashly, and Israel Treiman, all of St. Louis, Mo., for defendants Fruco Const. Co., and others.

HULEN, District Judge.

Plaintiff's complaint, filed April 24, 1943, and amended May 16, 1944, is brought under Title 31 U.S.C.A. §§ 231–234, providing for informer suits. Answers of defendants include a "jurisdictional plea," to-wit, that the complaint is based upon evidence and information in the possession of the United States at the time the case was instituted. Dismissal on that ground is sought. The jurisdictional plea is based upon that part of the amended statute reading as follows:

"The Court shall have no jurisdiction to proceed with any such suit brought under clause (b) or pending suit brought under this section whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought; Provided, However, That no abatement shall be had as to a suit pending on December 23, 1943, if before such suit was filed such person had in his possession and voluntarily disclosed to the Attorney General substantial evidence and information which was not theretofore in the possession of the Department of Justice."

Plaintiff, by reply, seeks to bring his cause within the exception contained in the amended statute by alleging:

"Before the present suit was filed, the relator, Gordon R. Coates, had in his possession and voluntarily disclosed to the Attorney General substantial evidence and information upon which this suit is based and which was not theretofore in the possession of the Attorney General or the Department of Justice."

By motion, the jurisdictional issue thus presented is now before the Court for

determination prior to a trial on the merits.

We are called upon now to decide whether plaintiff-informer did, before the original complaint was filed, have in his possession and voluntarily disclose to the Attorney General substantial evidence and information on which this suit is based, and which was not theretofore in possession of the Attorney General or the Department of Justice. If the answer is in the affirmative, the Court has jurisdiction to proceed with this case, contra, dismissal follows as of course.

The record made on the hearing of the jurisdictional issue involves the merits of plaintiff's claim, only to the extent necessary to pass on the matter now before the Court.

This case grows out of the construction of the St. Louis Small Arms Ammunition plant, begun on December 11, 1940. Buildings composing the plant were erected on a cost plus fixed fee contract between the United States and defendants Fruco Construction Company, Fruin Colnon Contracting Company, and the Massman Construction Company, as contractors. Plaintiff was a successful bidder on part of the tile used in the buildings and unsuccessful on other tile used. The defendant, St. Louis Clay Products Company, was a successful bidder on part of the tile used in the buildings, which tile was manufactured by the Arketex Ceramics Corporation.

The defendant, St. Louis Clay Products Company, obtained a purchase order dated May 20, 1941, to furnish ceramic glazed tile manufactured by the Arketex Ceramics Corporation. Prior to the placing of this order with the contractor, the Coates Company, a Missouri corporation, of which plaintiff is Secretary-Treasurer, had received an order for glazed tile and was laboring under the impression that it was to furnish the tile to be used in the construction. The theory of plaintiff's case appears to be that by connivance and fraud among the defendants, the Government was compelled to pay an excessive amount for tile, represented by the difference between the amount paid to de-fendant St. Louis Clay Products Company for tile under the contract given to it, and the amount for which an equal amount of tile, suitable for the same purpose, could have been obtained from the Coates Company on bid made by the latter company. Bids and purchases by the defendant contractors from the St. Louis Clay Products Company covered the period from May to December of 1941. Bids and purchases from the Coates Company covered the period from April to October, 1941.

In June of 1942, the Department of Justice instituted an investigation of the procurement practices followed in acquiring and paying for materials used in the Small Arms Plant. A year later the department of Justice announced completion of its investigation and that no criminal action would be recommended. During the period covered by the Department of Justice's investigation, its representatives sought and consulted with plaintiff-informer. The subject matter of these interviews constitutes the basis of plaintiff's claim that he had in his possession and at that time volunteered to the representatives of the Department of Justice substantial evidence and information which was not then in the possession of the department of Justice, and upon which plaintiff bases his action. Defendants deny there was any fraud on their part in the furnishing of materials to the Small Arms Plant. They claim plaintiff did not furnish any substantial evidence and information to the Department of Justice, on which this suit is based which was not already in the possession of the Department. On the issue thus formed, we find the facts as follows:

### Findings of Fact.

I. Defendant St. Louis Clay Products Company received a general purchase order from contractor-defendants on May 20, 1941, for $145,000, Number 1224, and thereafter received additional purchase orders, raising the sum to $562,500, on July 18, 1941. These orders were amended as of December 2, 1941, decreasing the amount of the order to $250,000; all for ceramic glazed tile.

II. The Coates Company, pursuant to a bid received April 23, 1941, confirmed by order on May 28, 1941, furnished one car load of salt glazed tile, and by October 8, 1941, had furnished all the unglazed tile used in the construction. The amount paid St. Louis Clay Products Company for ceramic glazed tile exceeded the sum the Coates Company bid for furnishing salt glazed tile (for which the ceramic tile was substituted) by an amount in excess of $50,000.

III. One J. L. Gedney was employed as purchasing agent by the contractors during the period involved, and signed the purchase orders for deliveries of tile by plaintiff and the St. Louis Clay Products Company.

IV. Plaintiff, as Secretary-Treasurer of the Coates Company, handled the business relations of that company with the contractor. He is experienced in the tile business and familiar with its manufacture, types, texture, uses, and the procedure in making estimates and plans and the quantity of tile that would be necessary to comply with them.

V. During the year 1941, in connection with his efforts to supply tile to defendant contractors, the plaintiff obtained information concerning the acquiring of tile by the defendant contractors and the supplying of tile by the defendant St. Louis Clay Products Company and Arketex Ceramics Corporation, as follows:

(a) That in the only (on the present record) open bidding on tile—with closing time set at 10:00 A.M., April 23, 1941—the Coates Company was caused to limit its bid on glazed tile to horizontal-celled salt glazed tile: (1) By the form and substance of the "Invitation to Bid," (2) by the form and substance of the general specifications issued April 21, 1941, (3) by the plans exhibited by Gedney to relator in 1941, (4) by the statement made by Gedney to relator in April, in answer to an inquiry on this point, that it was unnecessary for the Coates Company to bid on ceramic glazed tile as well as salt glazed tile, since the lowest bid would prevail; that the Coates bid was accompanied by a letter, with enclosures, evidencing ability of the Coates Company to make prompt delivery of the required tile (via Ayer-McCarel-Reagan Clay Co., National Fireproofing Corp., and Elgin Standard Brick & Mfg. Co.); [that on or about May 1, 1941, in a conversation with Gedney, relator was asked what the prices of the Coates Company would be on vertical-celled tile and relator answered that the prices bid on horizontal-celled tile would apply also to vertical-celled tile.] This oral supplement to the Coates Company bid (on the present record) was not reflected in the "Abstract of Bids" kept by the contractor's agent;

(b) That on May 5, 1941, in a further conversation with Gedney, relator learned that there was under consideration the use of brick on some of the interior walls in lieu of tile, whereby the total requirement of glazed tile units would be greatly reduced; and that thereupon the relator told Gedney that in such case the Coates Company could supply all of the glazed tile required through Ayer-McCarel-Reagan Clay Company, at the prices shown in the Coates bid for "trim colors" instead of the higher prices shown in the column headed "salt glazed." This oral statement was confirmed by relator's letter to Gedney dated May 6, 1941, but (on the present record) not in a manner that would be fully understood by one who had not participated in the conversation of May 5, since the reader of the letter might not know that the "trim color" prices quoted in the Coates bid represented prices on Ayer-McCarel-Reagan units.

(c) That in a conversation of May 9, 1941, Gedney told the relator that the Coates Company bid was the low bid, both on the glazed and unglazed tile, and that the first building for which tile would be needed was the lead shop (No. 112), the blueprint for which was handed by Gedney to relator.

(d) That the Coates Company promptly proceeded to act upon the oral order given by Gedney on May 9, 1941, by directing Ayer-McCarel-Reagan Clay Company to ship the glazed tile needed for the lead building, also by directing Elgin Standard Brick & Mfg. Co. to start shipments on

unglazed tile; that on May 16, 1941, the Coates Company made delivery of a carload of salt glazed tile. No written order for this tile was received until May 31, 1941.

(e) That on May 22, 1941, the relator brought to Gedney an invoice, on the Coates Company form, for the carload of tile delivered May 16, 1941; that Gedney, as agent of the contractor (according to the present record), then told the relator that the prices shown on said invoice would make his "other prices" look ridiculous (which, according to Coates, was his first intimation of purchases or intended purchases of tile from another source); that Gedney suggested to relator that he reconsider the prices shown on the invoice; that thereupon Gedney supplied relator with the contractors' form of invoice, to be used in re-invoicing said carload of tile; that the relator, after checking with his associates, informed Gedney that there would be no change in the Coates Company prices; and that the prices shown in the substituted invoice were exactly the same as the prices charged in the original invoice. This testimony was uncontradicted.

(f) There is evidence that, in addition to the blueprint of the lead building handed to him by Gedney on May 9, 1941, the relator had access to the blueprints of other buildings mailed to the Coates Company on dates commencing May 31, 1941; that thereby the relator was enabled to calculate substantially the quantity of tile units furnished by St. Louis Clay Products Company without reference to the purchase orders given to said company.

(g) That following statement of Gedney to relator on May 9, 1941, that the Coates Company bid was the low bid on the glazed and unglazed tile, the contractors, without notice to the relator, gave an order for purchases of ceramic glazed tile to the St. Louis Clay Products Company, as set out in Finding I, which ceramic glazed tile was to take the place of salt glazed tile upon which the relator's company had bid in the amounts as referred to in finding V, Sections (a) to (e).

(h) That in September, 1941, when St. Louis Clay Products Company and Arketex Ceramics Corporation failed to make deliveries on their contract and bid of previous May, Gedney called in the relator to ask if the Coates Company could supply the required glazed tile; that Gedney told the relator that he would like to get the tile at the prices bid by St. Louis Clay Products Company and in this connection exhibited to relator the first two general orders for tile given to St. Louis Clay Products Company, namely P.O. No. 1224 and P.O. No. 267; that the relator made a memorandum of said prices on the principal items in order to ascertain whether the suppliers of the Coates Company would meet these prices; thereby, without aid of the copies of the St. Louis Clay Products Company orders which the relator later obtained from Major Reuschlein, he was able to make an approximation of the amount paid for tile by the contractors to St. Louis Clay Products Company.

(i) Relator learned in May, 1941, that the plans had been changed on certain of the buildings, calling for ceramic tile in place of salt glazed tile; that ceramic tile was at that time selling for a price in excess of salt glazed tile.

VI. That the Department of Justice of the United States started an investigation of the procurement practices of the contractors in May, 1942; that the investigators assigned to the project by the Department of Justice were inexperienced in the building trade, and particularly in the tile industry, its manufacture, use and the terms by which kinds and shapes and uses of tile are designated.

VII. That the investigators of the Department of Justice interviewed relator in June, 1942, in connection with their investigation and from time to time sought and received information and evidence from him; that during the course of the interviews between the representatives of the Department of Justice and relator, relator conveyed to the representatives of the Department of Justice the matters and things referred to in sub-paragraphs (a) to (h) of Finding V; that relator did not

650

inform the representatives of the Department of Justice of the matters set forth in sub-paragraph (i) of Finding V; that the informer gave to the representatives of the Department of Justice considerable technical information about the meaning of the plans and specifications and terms therein referring to different kinds of tile, their uses in construction and their manufacture, and in these particulars thereby enabled the representatives of the Department of Justice to understand the plans and specifications and relate them to the building construction.

VIII. The information referred to in sub-paragraphs (a) to (h) of Finding V came into possession of the relator before any investigation was instituted by the Department of Justice and relator voluntarily made the above described disclosures to the representatives of the Department of Justice, and at the time of the disclosures such evidence and information (sub-paragraphs (a) to (g) of Finding V) was not in the possession of the Department of Justice.

■ Does the information disclosed by relator to representatives of the Department of Justice constitute substantial evidence and information upon which this suit is based, as that term is used in the amendment to the informer statute? We interpret the words "substantial evidence and information" as used in the amended statute to mean evidence and information that is real, not imaginary, and which upon the trial, if accepted by the jury as true, might have an actual and material bearing upon the charges made in the complaint.

"Substantial evidence is evidence which, if true, would have probative force on the issues; something of substance and relevant consequence; evidence which a reasonable mind might accept as adequate to support a conclusion. The term implies 'competent evidence.'" 32 C.J., Evidence, § 1016, p. 1043.

■ We believe the legislative intent in amending the informer statute was to restrict and limit informer suits to cases in which facts are voluntarily disclosed to the Department of Justice, which facts are not then in their possession, and are of a substantial nature, credible and trustworthy, and which are material to the matter under investigation. See United States ex rel. Sherr v. Anaconda Wire & Cable Co., D.C.S.D.N.Y., 1944, 57 F.Supp. 106, affirmed 2 Cir., 149 F.2d 680; United States ex rel. McLaughlin v. American Chain & Cable Co., D.C.S.D.N.Y., 1945, 62 F.Supp. 302. We do not find Congress intended to provide by the amendment to the act that the proof on the jurisdictional issue must go to the extent of showing that relator can make a prima facie case. If such was their purpose, the language fails to state it. It could have been so stated very easily. The parties, in presenting the record on the present question, did not proceed on that theory.

Bearing in mind that the gist of the plaintiff's complaint is that the change from salt glazed tile to the higher priced ceramic tile was unnecessary from a building standpoint and was brought about and produced by fraud and "misrepresentations" of the defendant contractors, and that a part of the misrepresentation was the failure of contractors' agent Gedney to inform "the Government as to what the glazed tile was costing and what the ceramic" tile was costing, we turn to sub-paragraph (a) of Finding V. Part of the tile purchased from the St. Louis Clay Products Company was (ceramic) vertical celled tile, and the prices charged and paid for this tile were higher than the price quoted by the St. Louis Clay Products Company on horizontal celled tile. It is the relator's theory that the failure of Gedney to reflect relator's bid with respect to vertical tile was purposely concealed from the Government so that the Government would not know it could obtain vertical tile from relator's company at the same price as horizontal tile. Referring to sub-paragraph (b) of Finding V, it is the relator's position that failure to report the lower quotation on the dark trim colors misled the Government's representatives. It is further the relator's position that the oral amendment of the Coates Company bid on the trim colors greatly increased the disparity between the prices quoted on ceramic tile by the St. Louis Clay Products

Company and the prices at which salt glazed tile was obtainable from the Coates Company, and that this difference in price was not made known by Gedney to the representatives of the Government. In referring to sub-paragraph (c) of Finding V, it is relator's position that as late as May 9th no decision had been made to change part of the tile from salt glazed tile to ceramic tile and that no change was made until it was found that relator's company would not increase its price above that originally bid. As to the matter referred to in sub-paragraph (d) of Finding V, it is relator's position that no order was given to the St. Louis Clay Products Company until May 20, 1941, and that this fact was not revealed to relator when it received its written order of May 31, 1941, although they had previously been informed they were the low bidder.

█ We now refer to sub-paragraph (e) of Finding V. This we consider the most substantial evidence produced at the hearing. The statement of the contractor's agent to relator that the price shown on his invoice would make "other prices" of other suppliers look ridiculous, and the request to relator that he reconsider the price shown on the invoice was an invitation to increase the price of tile on the bid being made by relator's company. Such a statement is inconsistent with honesty, and is consistent with wrongdoing in the procurement of supplies by the contractor's agent on the project. This conclusion is inescapable on the present record. It is relator's theory that the attempt to get the Coates Company to raise its bid was to improve the record on the higher price at which tile was being purchased from the St. Louis Clay Products Company. Were it not for this evidence, it is doubtful if the showing made by the relator would rise to the dignity of substantial evidence and information upon which the suit is brought. When this evidence is considered in connection with the other facts disclosed to the Government, we conclude that on the record as it now stands, there is some substantial evidence and information now in the possession of the Department of Justice which was conveyed to it by relator prior to the institution of this suit. The contractor defendants, through their agent, making such a bold invitation to the relator to increase his bid, such conduct standing undenied and unexplained, and in connection with the other facts referred to in sub-paragraphs (a) to (g) of Finding V, might, on trial, constitute substantial evidence and information of plaintiff's case. Absent explanation or contradiction, this Court is unwilling to dismiss this case and hold that the facts disclosed by Relator to the Department of Justice do not come within the meaning of the statute and its term "substantial evidence and information."

In making the above findings of fact and following conclusions of law, this Court does not undertake to pass upon the merits of this cause. Neither party, in presenting the present issue, attempted to try the merits of the cause. Of course, the parties understand any matter contained in the findings of fact or conclusions of law, or any statement that this hearing has been conducted prior to the trial of this case on its merits are not proper and will not be referred to in the trial before the jury. This is just a preliminary step necessary for plaintiff to obtain a trial. All questions hereafter will be passed upon solely on the record made at the trial.

Gedney is not a defendant in this case. Under certain circumstances, statements of an agent are not admissible against his principal; under others they are. At this stage of the proceedings, we do not presume that the statements of Gedney will be incompetent in the trial of this cause, and particularly so since that point has not been raised by defendants' able counsel.

### Conclusions of Law.

I. The evidence and information which relator acquired in the year 1941 and voluntarily disclosed to representatives of the Department of Justice constituted substantial evidence and information on the subject matter of the complaint upon which this suit was based.

█ II. The informer statute does not require that the informer must personal-

652

ly possess all of the information and evidence upon which the suit is based, and convey such evidence and information to the Department of Justice before suit is filed, but the informer brings himself within the exception to the statute by furnishing substantial evidence and information upon which the suit is based, not then in the possession of the Department of Justice, provided such substantial evidence and information is disclosed to the Attorney General prior to the filing of the suit.

III. The word "substantial," as used in the informer statute in relation to evidence and information upon which this suit is based, means evidence and information that is real, not imaginary, and which, if accepted by a jury as true, may constitute a part of the basis upon which plaintiff's complaint rests.

IV. This Court has jurisdiction of this cause.

An order may be submitted.