**UNITED STATES ex rel. SHERR v. ANACONDA WIRE & CABLE CO. et al.**

District Court, S. D. New York.
Aug. 3, 1944.

Francis M. Shea, Asst. Atty. Gen., James B. M. McNally, U. S. Atty., of New York City (Laurence H. Axman, Asst. U. S. Atty., of New York City, Joseph M. Friedman, of Washington, D. C., Jess G. Schiffmann, of New York City, and Tobias G. Klinger, of Cleveland, Ohio, of counsel), for the United States.

Chadbourne, Wallace, Parke & Whiteside, of New York City (Horace G. Hitchcock, and Dwight R. Collin, both of New York City, of counsel), for defendant Anaconda Wire & Cable Co.

Moses B. Sherr, of New York City, pro se.

LEIBELL, District Judge.

The relator, Moses B. Sherr, brought this qui tam action on December 23, 1942, against the Anaconda Wire and Cable Company and some of its officers. Only the corporation was served. The action was started two days after an indictment had been filed by a Grand Jury sitting in the United States District Court at Fort Wayne, Indiana. That Grand Jury heard evidence during the month of December 1942, concerning alleged fraudulent practices of the defendant corporation, Anaconda Wire and Cable Company, and certain of its Marion plant officials in circumventing and falsifying required tests of wire and cable material manufactured by the defendant corporation for the Army Signal Corps and for the United States Navy. A newspaper account of the indictment appeared in the New York Times on December 22nd.

It further appears that another Federal Grand Jury sitting at Providence, Rhode Island, heard evidence in the month of January 1943 against the defendant corporation and some of its Pawtucket plant officials and that on January 18, 1943, an indictment was returned against them making charges of fraud very similar to those embodied in the Indiana indictment. At the time the indictment was filed in Rhode Island on January 18, 1943, the United States promptly started a civil action under R.S. § 3492, 31 U.S.C.A. § 233, against the defendants for the damages sustained by the Government as a result of the defendant's fraudulent conduct at the Pawtucket plant.

On June 10, 1943, the defendants named in the indictment in the Indiana case entered a plea of nolo contendere in the United States District Court for the Northern District of Indiana and sentences were imposed on June 12, 1943. The criminal proceedings in Rhode Island went to trial and the defendants named therein were convicted and were sentenced on January 18, 1944.

On March 6, 1944, the United States entered an appearance in the Sherr qui tam action and on May 16, 1944, the United States commenced its own action against the defendant, Anaconda Wire and Cable Company, for substantially the same frauds as those set forth in the Indiana indictment and in this present qui tam action. It thus appears that criminal proceedings on the two indictments, the one in Fort Wayne, Indiana, and the other in Providence, Rhode Island, have both been disposed of and that at present the Government has two civil actions pending against the defendant corporation for filing false claims and other frauds.

After the institution of the Sherr qui tam action and similar qui tam actions in this Court and other Federal courts, the 78th Congress passed Public Law No. 213, which became a law December 23, 1943, 31 U.S.C.A. § 232. That law radically amended the former qui tam statute, which was embodied in Revised Statute, Sections 3491 and 3493. Section 3491 was recast and new provisions added thereto; old Section 3493 was repealed. R.S. § 3491 was § 232 of 31 U.S.C.A.; R.S. § 3493 was § 234 of the same Title.

Some of the purposes and effects of the new legislation have been discussed in an opinion by Judge A. N. Hand in the case of United States ex rel. Rodriguez v. Weekly Publications, Inc., 144 F.2d 186, in the Circuit Court of Appeals for this Second Circuit. The majority report of the Senate Judiciary Committee, which considered the new legislation, refers to the fact that the amendment of the old qui tam statute was sought because of the experiences of the Department of Justice— "that many persons who have filed suits

and may file suits under this section (3491 Rev.Stat.) have no information or facts of their own, but prepare and file complaints which obviously are based on information and alleged facts obtained bodily from indictments returned in the United States courts, from newspaper stories, and congressional investigations".

The Government on its present motion has filed an affidavit of one of its attorneys, who states that the Sherr complaint appears to be based on the Indiana indictment and the newspaper accounts thereof. The Government also annexes to its papers, as Exhibit F, a letter dated September 2, 1942, received by the United States Army Signal Corps from The Soviet Government Purchasing Commission in the U.S.A., and the Government's attorney states that the charges contained in paragraph 7 of the Sherr qui tam complaint herein "are practically copied word for word from this letter."

The relator Sherr has filed an affidavit on these present motions making the following admissions:

"It is hereby conceded that this suit is based upon evidence or information which was in the possession of the United States, or an agency, officer or employee thereof, at the time the suit was brought. It is further conceded that, before this suit was filed, plaintiff had not in his possession and had not voluntarily disclosed to the Attorney General substantial evidence and information which was not theretofore in the possession of the Department of Justice."

■ On the foregoing, it is clear that this Court should grant that part of the Government's motion herein which seeks an order determining that this action (the Sherr action) "was based upon evidence or information in the possession of the United States or agencies, officers or employees thereof at the time this suit was brought."

As a second part of its motion herein the Government prays for an order staying the Sherr action, in which it has filed a notice of appearance, "pending final determination of an action entitled United States of America v. Anaconda Wire and Cable Company, Civil No. 25-533, now pending in this Court and an action entitled United States of America v. Anaconda Wire and Cable Company et al., Civil No. 234,

now pending in the District of Rhode Island."

The plaintiff Sherr contends that because the Government filed a notice of appearance herein, the Government must either go on with the suit or permit Sherr to conduct the suit. To that the Government made answer in a supplemental memorandum from which I quote the following, as showing the Government's position herein:

"The argument of the relator ignores the fact that from the outset the Government indicated that it appeared in this action primarily for the purpose of determining, judicially, that the instant suit was based upon Government information. In that event, the Government clearly indicated that it did not wish to proceed with the qui tam suit, but intended to carry on and prosecute its own action brought under Section 3492 of the Revised Statutes. This procedure was the only reasonable one that could have been followed. Under the provisions of Public Law 213 the Attorney General could not make an ex parte determination of the basic issue as to whether or not the qui tam suit was based on Government information. Therefore, in order to have a binding determination made, and in order to give the qui tam plaintiff his day in court, the Government appeared in this suit for the aforesaid purpose. It would be absurd to say that by that appearance—made for the purpose of disposing of the action—the Government precludes itself from carrying on its own suit and discontinuing the qui tam suit. Indeed, if the qui tam plaintiff had certified, prior to the Government's appearance therein, that his suit was not based upon any original information, as he has now stated, no appearance by the Government would have been necessary."

The defendant corporation opposes the Government's motion and has made a counter motion in which it seeks "an order dismissing the complaint upon the ground that the Court lacks jurisdiction of the subject matter of this action, it appearing that the action is based upon evidence or information in the possession of the United States or an agency, officer or employee thereof at the time this action was brought." In support of its motion the defendant refers to the following provision of R.S. § 3491 as amended by Public Law 213:

"The court shall have no jurisdiction to proceed with any such suit brought under clause (B) or pending suit brought under section 3491 of the Revised Statutes whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought: Provided, however, That no abatement shall be had as to a suit pending at the effective date of this Act, if before such suit was filed such person had in his possession and voluntarily disclosed to the Attorney General substantial evidence and information which was not theretofore in the possession of the Department of Justice."

■ The words "any such suit" mean a suit brought by an informer, as well for himself as for the United States to recover the penalties and damages for which a person, who knowingly makes false claims against the Government, is liable under R.S. § 3490, 31 U.S.C.A. § 231.

■ Applying the above-quoted provision of R.S. § 3491 to the facts shown as to the source of the informer's information, I am obliged to conclude that this Court has "no jurisdiction to proceed with" the Sherr action. The notice of appearance of the Attorney General in the Sherr action does not change the situation. The right of the Attorney General to appear in a pending qui tam action under subdivision D of Public Law 213 does not have the effect of conferring jurisdiction on the Court, if under Subdivision B the action should otherwise be abated, because it was based on information already in the possession of the United States. The appearance of the Attorney General herein enabled him to submit to the Court proof that the Sherr action was not a genuine informers' suit, so that there could be a judicial determination to that effect. Under the facts as shown and admitted and in compliance with the statute as amended, it is the duty of this Court to enter an order dismissing the Sherr action because under the amendment to the statute the Court has lost jurisdiction of the subject matter of the action and the action has thereby abated. An order to that effect may be submitted for signature.

Judge A. N. Hand, in his opinion in the Rodriguez case, supra, refers to that provision of the statute and says:

"The amendment further provided that the court should have no jurisdiction to proceed with such a suit whenever it should appear that the suit was based upon evidence or information in possession of the United States at the time the suit was brought."

■ The relator Sherr has also made a motion herein. He seeks to vacate the notice of appearance filed by the Attorney General in the Sherr action on March 6, 1944, and he asks for an order permitting him "to continue the prosecution of this action, to the exclusion of The United States." In effect he claims that by filing his suit "prior to the filing of any other similar action" he obtained certain vested rights in the cause of action, and that he is being unlawfully "deprived of his vested contractual statutory rights and of due process of law and the equal protection of law guaranteed to him by the Fifth Amendment to the Constitution of the United States of America" by the Government's procedure herein. This contention as to vested rights in the informer, was described as "wholly illusory" by Judge A. N. Hand in his opinion in the Rodriguez case from which I quote the following:

"In spite of the fact that we shall dismiss the appeal, because the order was not appealable, it seems proper to say, for the guidance of the District Court in future actions, that the claim of the relator that the amendment to the Informers' Act, if applied to him, would unlawfully deprive him of rights guaranteed by the Constitution can have no basis. The relator acquired no vested right prior to the date of the amendment. His privilege of conducting the suit on behalf of the United States and sharing in the proceeds of any judgment recovered, was an award of statutory creation which, prior to final judgment, was wholly within the control of Congress. Norris v. Crocker, 13 How. 429, 14 L.Ed. 210; Western Union Telegraph Co. v. Louisville & N. R. Co., 258 U.S. 13, 42 S.Ct. 258, 66 L.Ed. 437; Louisiana v. Mayor [etc.], of New Orleans, 109 U.S. 285, 3 S.Ct. 211, 27 L.Ed. 936; State of Maryland v. Baltimore & Ohio Railroad Co., 3 How. 534, 11 L.Ed. 714. It is well settled that the repeal of a statute under which a suit for a penalty is brought terminates the plaintiff's right to recover. The amendment to the Informers' Act was adopted to correct abuses which had arisen under the original act and were referred to

in United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443. While the relator may have made investigations and furnished valuable information and evidence to the government he only brought the suit just prior to the effective date of the amendment. The Informers' Act made the successful prosecution of the suit, rather than the discovery of fraudulent conduct, the test of the right to share in any recovery. United States ex rel. Marcus v. Hess, 317 U.S. 537, 545, 63 S.Ct. 379, 87 L.Ed. 443. He had only just started the present suit when the amendment limiting his rights of recovery was enacted. It provided reasonable compensation, to be fixed by the court with a maximum statutory limit, for anything he might do or might have done in aid of the government, in place of the former award of 50% of any sums recovered. We regard the claim that the act as applied to the relator is unconstitutional as wholly illusory."

The relator Sherr made no investigations and furnished no information to the Government. His position is much more vulnerable than that of the relator in the Rodriguez case. His action has abated under the provisions of Public Law 213. The Sherr motion is accordingly denied in its entirety.

Submit orders on two days' notice.