## SHERR v. ANACONDA WIRE & CABLE CO.

No. 286.

Circuit Court of Appeals, Second Circuit.

May 25, 1945.

---

Moses B. Sherr, of New York City, pro se.

Horace G. Hitchcock and Chadbourne, Wallace, Parke & Whiteside, all of New York City (Dwight R. Collin, of New York City, of counsel), for appellee Anaconda Wire & Cable Co.

Joseph M. Friedman, of Washington, D. C., Francis M. Shea, Asst. Atty. Gen., and John F. X. McGohey, U. S. Atty., both of New York City, and Laurence H. Axman, Asst. U. S. Atty. (Jess G. Schiffmann, of Washington, D. C., and Tobias G. Klinger, of Cleveland, Ohio, of counsel), for United States, intervenor.

Before L. HAND and CLARK, Circuit Judges.

PER CURIAM.

This is an appeal from a judgment dismissing a complaint on motion of the defendant in an action qui tam brought before December 23, 1943 under § 232 of Title 31 U.S.C.A. The United States intervened and moved under subdivision C of that section as amended for a finding that the action had been based upon evidence and information already in the possession of the United States; and for a stay of all proceedings until the final determination of another action, brought in another district by the United States against the same defendant upon the same claim. The defendant itself then moved for a dismissal of the complaint upon the ground that under subdivision C the district court had lost jurisdiction of the action: and both motions came on to be heard together. It appeared that the qui tam plaintiff had in fact had no evidence or information not already in the possession of the United States, when he brought the action; but he nevertheless contended that, insofar as subdivision C for that reason affected to deprive the court of jurisdiction, it was unconstitutional. The district court held otherwise, 57 F.Supp. 106, and the relator appealed.

We see no reason to recede from the position which we took in United States ex rel. Rodriguez v. Weekly Publications, 2 Cir., 144 F.2d 186. It is indeed true, as the plaintiff has shown, that since the Fifteenth Century the English courts have held that the Crown could not by settlement or release bar a qui tam action, so far as the informer's interest was concerned; or indeed could not even discontinue it. Y.B. 1 H. VII, 3, a; Stretton v. Tayler, Cro.El. 138; Hammon v. Griffith, Cro.El. 583; Dr. Foster's Case, 11 Coke 65b (note); 3 Coke, Institutes 237. Moreover, in Couch v. Jefferies, 4 Burr. 2460, Lord Mansfield, in construing a statute not to be applicable to an action that had gone to verdict, though not to judgment, used this language: "Here is a right vested; and it is not to be imagined that the Legislature could by general words mean to take it away from the person in whom it was so legally vested, and who had been at a great deal of cost and charge in prosecuting." Hence, although the reversal in Nathanson v. United States, 321 U.S. 746, 64 S.Ct. 522, 88 L.Ed. 1049, did not touch the point, the decision in United States v. Baker-Lockwood Manufacturing Co., 8 Cir., 138 F.2d 48, may be open to conceivable doubt: i. e., that by filing a later action the United States could take the conduct of an earlier qui tam action out of the informer's control. Moreover, we recognize the distinction between a statute which puts an end to a claim based upon a penalty (Norris v. Crocker, 13 How. 429, 14 L.Ed. 210), and one which, though it keeps the claim alive, deprives the informer of his "vested" interest; giving him in exchange only a quantum meruit for the value of any information which he may have contributed to eventual success. § 232(E) (1), Title 31, U.S.C.A.

Here, there being no room for interpretation, the bare question before us is whether the act is unconstitutional as a violation of the Fifth Amendment. The argument is that § 232, as it stood when the plaintiff brought the action, was an offer, of which the mere filing of the complaint was an acceptance, and that the contract so arising was "property," which "vested" in the plaintiff, and which the Constitution put it beyond the power of Congress to divest. We by no means agree that the contract—if there was one, which in turn we do not say that there was—created the kind of property which the Fifth Amendment protects (certainly when, as here, the informer had done nothing more than file the complaint); but we

shall for argument assume that there was a contract and that it was protected by the Constitution. Even so, subdivision (C) was constitutional in putting an end to the jurisdiction of the district court. That would have been beyond any doubt, if the plaintiff had been no more than a representative of the United States to prosecute its claim; for in that event the United States might take over the prosecution, and relegate the plaintiff to his action in the Court of Claims upon whatever contract he might prove. Clearly he could not specifically enforce such a contract; indeed, he could not have done so even against a private client. And if, as we are assuming, his "vested rights" included a lien upon, —or, if one choose, even a partial assignment of,—the claim, the result is the same. For, even though then the act affected a "taking" of property, it would not be a "taking" without "just compensation," because he would again have recourse to the Court of Claims for whatever compensation the Constitution assured him; and that recourse is an adequate remedy. § 250(1), Title 28 U.S.C.A. United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539; Hurley v. Kincaid, 285 U.S. 95, 52 S.Ct. 267, 76 L.Ed. 637; Yearsley v. Ross Construction Co., 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554.

Judgment affirmed.

CLARK, Circuit Judge (concurring).

Lest my concurrence herein be taken as going further than I wish, I think I should add that I see no contract in any real sense between the relator and the sovereign, only a method of law-enforcement by private individuals under the stimulus of a reward for successful accomplishment, but with nothing to prevent the sovereign from resuming enforcement itself before the reward has been earned.