MILLER et al. v. HOWE SOUND MIN. CO. (UNITED STATES, Intervener).

Civil Action No. 628.

District Court, E. D. Washington, N. D.

May 11, 1948.

542

R. Max Etter, of Spokane, Wash., Leif Erickson, of Helena, Mont., and H. L. Maury and A. G. Shone, both of Butte, Mont., for plaintiffs.

Randall & Danskin, of Spokane, Wash., and Bogle, Bogle & Gates, of Seattle, Wash., for defendant.

Tom C. Clark, Atty. Gen., Peyton Ford, Asst. Atty. Gen., Enoch E. Ellison, Sp. Asst. to Atty. Gen., Johanna M. D'Amico, Atty., Department of Justice, of Washington, D. C., and Harvey Erickson, U. S. Atty., of Spokane, Wash., for the United States.

DRIVER, District Judge.

Plaintiffs brought this action against their common employer to recover overtime pay under the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. §§ 201–219. The complaint was filed on Jan-

uary 20, 1947. The defendant has moved to dismiss the complaint upon a number of grounds, but only one is now under consideration, namely, that the action is barred by paragraphs (a) and (d) of Section 2, Part II, of the Portal-to-Portal Act, Public Law 49, 80th Congress, approved May 14, 1947, 29 U.S.C.A. § 252(a, d). In pertinent part, they read as follows: "(a) No employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended * * * (in any action or proceeding commenced prior to or on or after the date of the enactment of this Act), on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any activity of an employee engaged in prior to the date of the enactment of this Act, except an activity which was compensable by either—(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or (2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee was employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer. * * * (d) No court of the United States, of any State, Territory, or possession of the United States, or of the District of Columbia, shall have jurisdiction of any action or proceeding, whether instituted prior to or on or after the date of the enactment of this Act, to enforce liability or impose punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, * * * to the extent that such action or proceeding seeks to enforce any liability or impose any punishment with respect to an activity which was not compensable under sections (a) and (b) of this section."

The complaint does not allege that the activities for which overtime compensation is claimed are based upon either an express contract or a custom or practice, and plaintiffs concede that the motion to dismiss should be granted unless both sections (a) and (d), quoted above, are adjudged to be unconstitutional. They contend that in its retroactive aspects, the Portal-to-Portal Act violates the due process clause of the Fifth Amendment. The United States has intervened pursuant to the Act of August 24, 1937, 50 Stat. 751, 28 U.S.C.A. § 401.

■ Section 2(d) should first be considered since it sets up a direct and positive jurisdictional bar and if it is valid, the instant action must be dismissed without further ado. In support of its constitutionality, defendant and intervenor point out that no Court in the Federal system, except the Supreme Court, derives its jurisdiction directly from the Constitution, that all of the others depend upon the authority of Congress for their jurisdiction, and that jurisdiction, conferred upon an inferior Federal Court, may, at the will of Congress, be taken away in whole or in part. See Kline v. Burke Const. Co., 260 U.S. 226, on page 234, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077, and cases cited.

■ In the present case, however, we do not have a simple, straightforward regulation by Congress of the jurisdiction of inferior Federal Courts. The purpose of Congress, plainly apparent on the face of the statute, was to use withdrawal of jurisdiction as a means of striking down pending actions for overtime pay. In Section 2(a), Congress directly barred recovery on pre-existing claims by relieving employers of liability therefor. In Section 2 (d), to make assurance doubly sure, it deprived all courts, both Federal and State, of jurisdiction to enforce the claims. Here the real question is whether Congress, under the guise of exercising its authority over the jurisdiction of inferior Federal Courts, can validly destroy constitutionally protected private rights by removing every possible means for their judicial enforcement. If it can do so, that is the end of the present case, so far as this Court is concerned; otherwise, the question of the constitutionality of Section 2(a), designed to directly bar recovery on pre-existing claims

for overtime compensation, should be considered.

No case has been cited, or otherwise brought to my attention, in which it has been held that Congress, by destroying every possible remedy, can deprive a person of vested property rights without due process of law. In the cases cited by defendant and intervener either there was not a complete denial of every judicial remedy, or the right involved was not a constitutionally protected one. Thus, in some cases, jurisdiction was withdrawn from Federal District Courts, but was left undisturbed in the State Courts (Assessors v. Osbornes, 9 Wall. 567, 76 U.S. 567, 19 L.Ed. 748; Insurance Co. v. Ritchie, 5 Wall. 541, 72 U.S. 541, 18 L.Ed. 540; Levering & Garrigues Co. v. Morrin, 2 Cir., 71 F.2d 284; Id., 293 U.S. 595, 55 S.Ct. 110, 79 L.Ed. 688) or in the Court of Claims (Sherr v. Anaconda Wire & Cable Co., 2 Cir., 149 F.2d 680; Id., 326 U.S. 762, 66 S.Ct. 143, 90 L.Ed. 458). In other cases, there was only a procedural change, without complete deprivation of remedy, such as the requirement that before bringing suit against a collector for refund of illegally collected taxes, the taxpayer must prosecute an appeal to the Commissioner of Internal Revenue (Collector of Internal Revenue v. Hubbard, 12 Wall. 1, 79 U.S. 1, 20 L.Ed. 272), or the statutory provision depriving the District Court for Puerto Rico of jurisdiction to enjoin the collection of taxes (Smallwood v. Gallardo, 275 U.S. 56, 48 S.Ct. 23, 72 L.Ed. 152). In other cited cases, no constitutionally protected right was involved. Baltimore and Potomac Railroad Co. v. Grant, 98 U.S. 398, 25 L.Ed. 231 (withdrawal of the right of appeal from one court to another); In re Hall, 167 U.S. 38, 17 S.Ct. 723, 42 L.Ed. 69 (withdrawal of a gratuity).

Plaintiffs, on the other hand, cite a number of cases, which hold that substantial impairment of the remedy for the enforcement of a contract right is tantamount to impairment of the right, itself. In Lynch v. United States, 292 U.S. 571, 580, 54 S. Ct. 840, 844, 78 L.Ed. 1434, Mr. Justice Brandeis said: "Contracts between individuals or corporations are impaired within the meaning of the Constitution (art. 1,

§ 10, cl. 1) whenever the right to enforce them by legal process is taken away or materially lessened."

In Worthen Co. v. Thomas, 292 U.S. 426, 54 S.Ct. 816, 78 L.Ed. 1344, 93 A.L.R. 173, the Supreme Court held that an Arkansas statute, exempting from liability or seizure, under judicial process of any court, the benefits of a life insurance policy, received by a beneficiary, was void under the contract clause of the Federal Constitution (Article I, Section 10) as to indebtedness contracted prior to the enactment of the statute.

Other cases cited by plaintiffs as supporting the same principle are: Bronson v. Kinzie, 1 How. 311, 42 U.S. 311, 11 L.Ed. 143 (a state statute changing the procedure for the foreclosure of mortgages to the disadvantage of mortgagees), and Edwards v. Kearzey, 96 U.S. 595, 24 L.Ed. 793 (a state statute increasing the personal exemption allowance of debtors). The following quotation from the opinion in Bronson v. Kinzie expresses the rule upon which the plaintiffs rely: "Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract, itself. In either case it is prohibited by the Constitution. * * * But it is manifest that the obligation of the contract, and the rights of a party under it, may, in effect, be destroyed by denying a remedy altogether; or may be seriously impaired by burdening the proceedings with new conditions and restrictions, so as to make the remedy hardly worth pursuing. And no one, we presume, would say that there is any substantial difference between a retrospective law declaring a particular contract or class of contracts to be abrogated and void, and one which took away all remedy to enforce them, or encumbered it with conditions that rendered it useless or impracticable to pursue it."

Again, in Brinkerhoff-Faris Trust & Savings Co. v. Hill, 281 U.S. 673, 682, 50 S.Ct. 451, 74 L.Ed. 1107, it was held that a State may not, consistent with due process, deprive a person of all existing remedies

for the enforcement of a right, which the State has no power to destroy.

■ ■ Defendant and intervener contend that the cases cited above are not in point because they deal with denial of remedies by State action and, as to many of them, for the further reason that the constitutional safeguard involved was the contract clause of the Federal Constitution rather than the due process clause of the Fifth Amendment. The authority of Congress to withdraw jurisdiction from Federal Courts, they maintain, is in a different category since it is conferred by the Constitution, itself, "in plenary terms." The contract clause does not, directly, apply to the Federal Government, it is true, but valid contracts are property, and rights arising out of them are protected by the due process clause of the Fifth Amendment, which is a limitation on the powers of the Federal Government. Lynch v. United States, 292 U.S. 571, 579, 54 S.Ct. 840, 78 L.Ed. 1434. If, therefore, the States are prohibited by the contract clause from destroying contract rights by withdrawal of all possible remedies, it would seem that the Federal Government, likewise, is foreclosed by the Fifth Amendment from doing the same thing with respect to vested property rights. Nor do I agree that the constitutional authority of Congress over the jurisdiction of Federal Courts is absolute and unlimited. As I shall point out later on in this opinion, all of the substantive powers granted to Congress in the Constitution are subject to the limitations imposed by the Fifth Amendment.

The following language of Chief Justice Hughes, in Graham v. Goodcell, 282 U.S. 409, 431, 51 S.Ct. 186, 194, 75 L.Ed. 415, implies that the power of Congress to withdraw remedies is not unlimited: "If the Congress did not have the authority to deal by a curative statute with the taxpayers' asserted substantive right, in the circumstances described, it could not be concluded that the Congress could accomplish the same result by denying to the taxpayers all remedy both as against the United States and also as against the one who committed the wrong."

■ It is my conclusion that Congress can not destroy constitutionally protected property rights by the expedient of withdrawing jurisdiction from every Court in which suits for their enforcement could be brought. The validity of Section 2(d) of the Portal-to-Portal Act, the jurisdictional subsection, therefore, depends upon the constitutionality of Section 2(a), the subsection which directly relieves the employer of liability. On the issue of constitutionality, the two subsections must stand or fall together, and it is necessary to consider whether plaintiffs' claims to overtime pay embrace constitutionally protected property rights.

■ Section 2(a) is expressly retroactive. It precludes recovery on any claim for overtime compensation not based on custom or express contract "in any action or proceeding commenced prior to * * * the enactment of this Act." Plaintiffs particularly object to this retroactive feature of the law. Their assertion that Courts have been inclined to look with disfavor upon retroactive statutes may be well founded, but, nevertheless, there is no provision of the Federal Constitution, which forbids Congress to enact such legislation when it is dealing with purely civil affairs. The clause of Article I, Section 9, which forbids the enactment of ex post facto laws, applies only to criminal or penal statutes (Johannessen v. United States, 225 U.S. 227, 32 S.Ct. 613, 56 L.Ed. 1066; De Pass v. Bidwell, C.C., 124 F. 615), and the contract clause, by its express terms, applies only to the States. If Section 2(a) is unconstitutional, therefore, it must be for some reason other than its retrospective character. It must also appear that it deprives the plaintiffs of vested property rights without due process of law.

In determining the constitutionality of Section 2(a), it is necessary to consider two questions: first, whether the rights of the plaintiffs in the present action are such as ordinarily would come within the protection of the due process clause, and, second, if so, whether Congress can, nevertheless, in the exercise of its broad constitutional power to regulate interstate commerce, override those rights.

■ Taking up the first of the stated questions, what, then, is the nature of plaintiffs' rights to overtime compensation? Plaintiffs say that they are contractual in character since the Fair Labor Standards Act of 1938, in legal effect, entered into and became a part of their contracts of employment. Defendant and intervener, on the other hand, assert that plaintiffs' rights are purely statutory since they arise solely out of the provisions of the Fair Labor Standards Act, as construed by the Supreme Court in decisions culminating in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515. I cannot wholly agree with either contention. I regard plaintiffs' rights as neither strictly contractual nor purely statutory. They were created by and necessarily are based upon, the Fair Labor Standards Act, but where, as in the instant case, employees have, during the life of the Act, performed labor, which entitled them to receive overtime pay, their claims to such pay are not in the nature of mere statutory gratuities, but are quasi-contractual and compensatory in character. The Supreme Court has said that even liquidated damages under the Act "are compensation" for retention of the workman's pay. Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682. Accord: Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296; D. A. Schulte, Inc., v. Gangi, 328 U.S. 108, 115, 116, 66 S.Ct. 925, 90 L.Ed. 1114, 167 A.L.R. 208.

In Cannon v. Miller, 22 Wash.2d 227, 155 P.2d 500, 507, 157 A.L.R. 530, the Washington State Supreme Court was called upon to decide whether an action for overtime compensation, under the Fair Labor Standards Act, was governed by a State statute of limitations as "An action upon a contract or liability, express or implied" or was within a general catch-all statute of limitations as a liability created by statute. The Court held that the catch-all statute governed, but in the well-reasoned, majority opinion, Judge Steinert concluded that the rights of the employees to overtime pay were quasi-contractual in character, as appears from the following quotation, (page 242 of 22 Wash.2d, page 508 of 155 P.2d): "In this instance, the statute alone created

the obligation, and the law imposes upon it a fictitious promise to pay, in order that the contractual remedy of *assumpsit* may be made applicable thereto. The legal duty thus created, though of a contractual nature, is not a contract in any real sense, but only in a fictional sense, and constitutes what is designated as a quasi contract or constructive contract."

Steamship Company v. Joliffe, 2 Wall. 450, 69 U.S. 450, 17 L.Ed. 805, involved a California statute, which provided that when a vessel was spoken by a licensed port pilot and his services were declined, he was entitled to one-half pilotage fees. After a pilot had unsuccessfully offered his services and had brought suit, under the statute, to recover one-half the customary fee, the law was repealed. The Supreme Court held that his right of action was not purely statutory, but was quasi-contractual and compensatory, and, therefore, was a vested right which survived the repeal of the statute under which it arose. On page 457 of the opinion in 2 Wall., Mr. Justice Field, speaking for the Court, said: "If the services tendered are declined, the half fees allowed are by way of compensation for the exertions and labor made by the pilot, and the expenses and risks incurred by him in placing himself in a position to render the services, which, in the majority of cases, would be required. The transaction, in this latter case, between the pilot and master or owners, cannot be strictly termed a contract, but it is a transaction to which the law attaches similar consequences; it is a quasi contract."

In Ettor v. City of Tacoma, 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773, a property owner brought suit against the City of Tacoma for damages to his property, resulting from the original grading of a street. A Washington statute authorized recovery for such damages, but while the action was pending, the statute was amended so as not to apply to the original grading. The Supreme Court held that upon the damaging of his property, while the statute allowing compensation therefor was in effect, the owner had acquired a vested right to compensation of which he could not be deprived retroactively without contravention of the due process clause of the

Fourteenth Amendment. In the opinion (pages 156, 157, 158 of 228 U.S., page 430 of 33 S.Ct.), the Court said: "The necessary effect of the repealing act, as construed and applied by the court below, was to deprive the plaintiffs in error of any remedy to enforce the fixed liability of the city to make compensation. This was to deprive the plaintiffs in error of a right which had vested before the repealing act,—a right which was in every sense a property right. Nothing remained to be done to complete the plaintiffs' right to compensation except the ascertainment of the amount of damage to their property. The right of the plaintiffs in error was fixed by the law in force when their property was damaged for public purposes, and the right so vested cannot be defeated by subsequent legislation. * * * In the instant case the action is neither for a tort, nor for a penalty, nor for a forfeiture, but for injury to property, actually accomplished before the repeal of the law under which the street was graded, which required compensation to be made. The right to compensation was a vested property right."

Citing Steamship Company v. Joliffe, supra, 2 Wall. 450, 69 U.S. 450, 17 L.Ed. 805 and Ettor v. City of Tacoma, supra, 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773, as supporting authorities, the Supreme Court held, in Coombes v. Getz, 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866, that repeal of a provision of the Constitution of California, which fixed the liability of directors of a corporation to its creditors for moneys embezzled or misappropriated by the officers of the corporation, could not defeat recovery by a creditor in an action based on the constitutional provision and instituted prior to its repeal. On page 442 of the opinion in 285 U.S., on page 436 of 52 S.Ct., the Court said: "The right of this petitioner to enforce respondent's liability had become fully perfected and vested prior to the repeal of the liability provision. His cause of action was not purely statutory. It did not arise upon the constitutional rule of law, but upon the contractual liability created in pursuance of the rule. Although the latter derived its being from the former, it immediately acquired an independent existence competent to survive the destruction of the provision which gave it birth. The repeal put an end to the rule for the future, but it did not and could not destroy or impair the previously vested right of the creditor * * *."

It will be noted that all of the cases, above cited, involved State constitutional or statutory enactments. (I have been unable to find a case in point involving a Federal statute.) But it seems to me that they should be considered as apposite. The language of numerous decisions of the Supreme Court and the way in which the Court, in considering constitutional questions, pertaining to property rights, has indiscriminately cited as sustaining authority cases involving Federal and State statutes clearly indicates that so far as substantive due process is concerned, the principles which apply to the Fourteenth Amendment are applicable also to the Fifth Amendment. Carroll v. Greenwich Ins. Co. of New York, 199 U.S. 401, 26 S.Ct. 66, 50 L.Ed. 246; Nebbia v. People of State of New York, 291 U.S. 502, 525, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469; Wright v. Union Central Life Ins. Co., 304 U.S. 502, 515, 58 S.Ct. 1025, 82 L.Ed. 1490; Federal Power Commission v. Natural Gas Pipeline Co. of America, 315 U.S. 575, 582, 62 S.Ct. 736, 86 L.Ed. 1037; and see also West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330.

In Carroll v. Greenwich Ins. Co. of New York, supra, 199 U.S. 401, page 410, 26 S.Ct. 66, 67, 50 L.Ed. 246 Mr. Justice Holmes, speaking for the Court, said: "While we need not affirm that in no instance could a distinction be taken, ordinarily if an act of Congress is valid under the 5th Amendment it would be hard to say that a state law in like terms was void under the 14th."

In support of their contention that plaintiffs' rights to overtime pay are purely statutory, defendant and intervener cite cases which, for the most part, involve subsequent legislative withdrawal of existing rights, not compensatory in character, such as the repeal of a penalty provision (Norris v. Crocker, 13 How. 429, 54 U.S. 429, 14 L.Ed. 210), or the withdrawal of the privilege of obtaining a reward or gratuity

(United States ex rel. Rodriguez v. Weekly Publications, 2 Cir., 144 F.2d 186; Id., D.C., 54 F.Supp. 476), or restricting the privilege of a public utility to condemn property. Western Union Tel. Co. v. Louisville & N. R. Co., 258 U.S. 13, 42 S.Ct. 258, 66 L.Ed. 437. I shall comment upon only one case, which the defendants particularly stress, namely, National Carloading Corporation v. Phoenix-El Paso Express, 142 Tex. 141, 176 S.W.2d 564. In that case, a motor carrier brought suit against a freight forwarder to recover undercharges resulting from a ruling of the Interstate Commerce Commission. Subsequently, Congress amended the Interstate Commerce Act, 49 U.S.C. A. § 1 et seq., in such a way as to change the status of freight forwarders and expressly granted them immunity from liability for past undercharges. The Texas Supreme Court held that the motor carrier's right of action could be retroactively barred and certiorari was denied. 322 U.S. 747, 64 S.Ct. 1156, 88 L.Ed. 1578. There is language in the opinion of the Texas Court, which indicates that it did not regard the carrier's right to recover the undercharges as a vested right within the protection of the Fifth Amendment, but it also said (opinion, page 569 of 176 S.W.2d), in answer to the carrier's contention that the retroactive destruction of its right of action violated the Fifth Amendment's prohibition against deprivation of property without due process of law: "With this contention we cannot agree. We are here dealing with the exercise by Congress of a power conferred by the Federal Constitution to regulate interstate commerce. The provisions of the Fifth Amendment may not be invoked to obstruct a national policy which Congress has the power to adopt." It thus appears that the Texas Court's decision was not based solely upon a finding that the right of action was purely statutory.

 The foregoing authorities, I feel, justify the conclusion that plaintiffs' claims to overtime pay, although arising out of the Fair Labor Standards Act, are compensatory and quasi-contractual, vested property rights, such as would usually be within the protection of the due process clause.

Next to be considered is whether Congress, in the exercise of its power to regulate interstate commerce, may constitutionally bar recovery of plaintiffs' claims. Defendants call attention to language appearing in various decisions of the Supreme Court to the effect that the power of Congress over interstate commerce is broad and plenary and may be freely exercised to the full extent of the grant expressed in the Constitution. A typical example is the following language of Chief Justice Marshall in Gibbons v. Ogden, 9 Wheat. 1, 22 U.S. 1, 6 L.Ed. 23: "This power [to regulate commerce] like all others vested in Congress is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations other than are prescribed in the Constitution." The foregoing, and similar expressions, appear in numerous later cases. A recent example is the statement of Mr. Justice Murphy, speaking for the Court in American Power & Light Co. v. Securities & Exchange Comm., 329 U.S. 90, 104, 67 S.Ct. 133, 141, 91 L. Ed. 103, that: " * * * the federal commerce power is as broad as the economic needs of the nation." However, in the same opinion (see page 100 of 329 U.S., page 140 of 67 S.Ct.), the writer stated the following qualification, which applies to all such broad, general characterizations of the interstate commerce power of Congress: "Any limitations [on the commerce clause] are to be found *in other sections of the Constitution.*" (Emphasis added.) A more specific statement of the qualification is the following from Railroad Retirement Board v. Alton R. Co., 295 U.S. 330, 347, 55 S.Ct. 758, 761, 79 L.Ed. 1468: "All agree that the pertinent provision of the Constitution is article 1, § 8, cl. 3, which confers power on the Congress 'to regulate commerce * * * among the several States; * * *' and that *this power must be exercised in subjection to the guarantee of due process of law found in the Fifth Amendment.*" (Emphasis added.) The Supreme Court, many times, has said that all of the great substantive powers granted to Congress in the Constitution are subject to the Fifth Amendment. Monongahela Nav. Co. v. United States, 148 U.S. 312, 336, 13 S.Ct.

622, 37 L.Ed. 463; United States v. Joint Traffic Ass'n, 171 U.S. 505, 571, 19 S.Ct. 25, 43 L.Ed. 259; Lottery Case, Champion v. Ames, 188 U.S. 321, 362, 23 S.Ct. 321, 47 L.Ed. 492; Carroll v. Greenwich Ins. Co. of New York, supra, 199 U.S. 401, 410, 26 S.Ct. 66, 50 L.Ed. 246; United States v. Chicago M., St. P. & P. R. Co., 282 U.S. 311, 51 S.Ct. 159, 75 L.Ed. 359; Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106; Wright v. Vinton Branch of Mountain Trust Bank of Roanoke, Va., 300 U.S. 440, 456, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455; North American Co. v. Securities & Exchange Comm., 327 U.S. 686, 705, 66 S.Ct. 785, 90 L.Ed. 945.

The limitations imposed upon the commerce power by the due process clause, however, are by no means absolute or hard and fast ones. When vital public interests are at stake and the exercise by Congress of its commerce power is attended by incidents analogous to those which attend the police power of a State, then Congress may constitutionally encroach upon interfering, private, vested interests, if it does not act arbitrarily or capriciously and adopts reasonably suitable means to accomplish its purposes. Louisville & Nashville R. Co. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A.,N.S., 671; North American Co. v. Securities & Exchange Comm., 327 U.S. 686, 66 S.Ct. 785, 90 L.Ed. 945; American Power & Light Co. v. Securities & Exchange Comm., 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103; Norman v. Baltimore & Ohio R. Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352; Guaranty Trust Co. of New York v. Henwood, 307 U.S. 247, 59 S.Ct. 847, 83 L.Ed. 1266.

The first of the cited cases, Louisville & Nashville R. Co. v. Mottley, supra, was an action brought to enforce a written contract by which the Railroad Company, in consideration of the release by Mottley of a claim against it for personal injuries, agreed to issue free, annual passes on its railroad to Mottley and wife so long as either of them should live. The contract was made in 1871. In 1906, Congress passed an Act making it unlawful for a common carrier to issue a free pass or carry a passenger for compensation other than at scheduled rates. 49 U.S.C.A. § 1 et seq. It was held that the contract could not be enforced, despite Mottley's contention that the governing statute violated his rights under the Fifth Amendment. In the opinion (page 482 of 219 U.S., page 270 of 31 S.Ct.) Mr. Justice Harlan said: "The agreement between the railroad company and the Mottleys must necessarily be regarded as having been made subject to the possibility that, at some future time, Congress might so exert its whole constitutional power in regulating interstate commerce as to render that agreement unenforceable, or to impair its value. That the exercise of such power may be hampered or restricted to any extent by contracts previously made between individuals or corporations is inconceivable. The framers of the Constitution never intended any such state of things to exist."

The next two cases cited on the point under discussion, North American Co. v. Securities & Exchange Comm., supra, and American Power and Light Co. v. Securities & Exchange Comm., supra, involved the constitutionality of Section 11 (b) (1) and Section 11 (b) (2), respectively, of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 K(b) (1, 2). The statutory provisions were held to be valid notwithstanding their imposition upon public utility holding company systems of burdensome restrictions and requirements with reference to their financial practices and organizational structures.

In Norman v. Baltimore & Ohio R. Co., supra, 294 U.S. 240, 55 S.Ct. 407, 417, 79 L.Ed. 885, 95 A.L.R. 1352, the Court had under consideration the Joint Resolution of Congress of June 5, 1933, 31 U.S.C.A. § 463, which provided that notwithstanding "gold clauses" in private contracts for the payment of money, the obligations thereof could be discharged by the payment, "dollar for dollar," in coin or currency, which at the time of payment was legal tender. The holders of certain bonds and bond coupons, issued long prior to the passage of the resolution, contended that the Joint Resolution deprived them of their property with-

out due process of law, in violation of the Fifth Amendment. The Court held that Congress had acted within its constitutional authority. Mr. Chief Justice Hughes, speaking for the Court, said: "There is no constitutional ground for denying to the Congress the power expressly to prohibit and invalidate contracts although previously made, and valid when made, when they interfere with the carrying out of the policy it is free to adopt. * * * Despite the wide range of the discussion at the bar and the earnestness with which the arguments against the validity of the Joint Resolution have been pressed, these contentions necessarily are brought, under the dominant principles to which we have referred, to a single and narrow point. That point is whether the gold clauses do constitute an actual interference with the monetary policy of the Congress in the light of its broad power to determine that policy. Whether they may be deemed to be such an interference depends upon an appraisement of economic conditions and upon determinations of questions of fact. With respect to those conditions and determinations, the Congress is entitled to its own judgment. We may inquire whether its action is arbitrary or capricious, that is, whether it has reasonable relation to a legitimate end. If it is an appropriate means to such an end, the decisions of the Congress as to the degree of the necessity for the adoption of that means, is final."

Plaintiffs say the Norman case is distinguishable because there the Court had under consideration "contracts, which, though made before the statute was passed, did not become enforceable and the cause of action did not arise until after the statute was passed." I find no basis for such a distinction in the opinion. Two different bond issues were involved. One, dated May 1, 1903, was payable May 1, 1933 (opinion, page 294 of 294 U.S., page 410 of 55 S.Ct.). As stated above, the Joint Resolution was passed June 5, 1933. The other bond issue, by a different company, was dated February 1, 1930, and the interest coupon, sued upon, was not payable until February 1, 1934 (opinion, page 293 of 294 U.S., page 409 of 55 S.Ct.). The Court in its dis-cussion of the issues, made no distinction between them.

In the Norman case, the bond holders were not entirely denied recovery, it is true, since they were permitted to recover the face value of their demands in legal tender money; but in so far as their property rights were based upon the "gold clause" in their bonds, such rights were completely destroyed. The loss was a very substantial one. It appears from the opinion (pages 315, 316 of 294 U.S., page 419 of 55 S.Ct.) that had they been permitted to enforce their "gold clause" provisions, they would have recovered the equivalent of one dollar and sixty-nine cents for every dollar of the face value of their claims. Moreover, under the Portal-to-Portal Act in the present case, workmen, likewise, are not denied all recovery for overtime compensation under the Fair Labor Standards Act, but are precluded only as to so much thereof as is not based upon express contract or custom.

Guaranty Trust Co. of New York v. Henwood, supra, 307 U.S. 247, 59 S.Ct. 847, 83 L.Ed. 1266, the last of the cases cited on the point under consideration, may be regarded as a comparison to the Norman case. The latter was concerned with the "gold clause" in bonds, whereas the former involved a clause giving the holder of the bonds an option to require payment in foreign currency. In both cases, the validity of the Joint Resolution of Congress was sustained.

Only a few cases have been called to my attention, in which an Act of Congress has been declared invalid under the property protective clauses of the Fifth Amendment. In Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434, the Court had under consideration a provision of the Economy Act of March 20, 1933, which repealed "all laws granting or pertaining to yearly renewable term insurance." 38 U.S.C.A. § 717. It was held that policies of term insurance were contracts of the United States and the rights of beneficiaries thereunder were property rights, protected by the Fifth Amendment. The statutory provision was declared void. The case is distinguishable from the case at bar. Congress, in the exercise of its constitutional

authority, has broader power in dealing with contracts of private persons than it has with respect to contracts of the sovereign United States. Perry v. United States, 294 U.S. 330, 350, 351, 55 S.Ct. 432, 79 L. Ed. 912, 95 A.L.R. 1335.

In Railroad Retirement Board v. Alton, supra, 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468, a Federal statute, 45 U.S.C.A. § 201 et seq., providing for retirement of railroad employees, was held to be invalid because its provisions violated the due process clause of the Fifth Amendment. The Court, after careful and thorough analysis of the statute and the facts and circumstances, claimed to justify its enactment, came to the conclusion that Congress had acted arbitrarily and that some of its provisions did not have a reasonable relation to its main and controlling purposes. There, it appeared from findings of fact of the lower Court, that the attackers of the statute had met the burden of showing that it was unreasonably burdensome and oppressive. Pages 360, 361 of 295 U.S., page 767 of 55 S.Ct. Also it should be noted that the case was decided on dual grounds. In addition to its conclusion that the statute violated the due process clause of the Fifth Amendment, the Court also concluded that it was "not in purpose or effect a regulation of interstate commerce within the meaning of the Constitution." Page 362 of 295 U.S., page 768 of 55 S.Ct.

Louisville Joint Stock Land Bank v. Radford, supra, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, is the case in which the Supreme Court struck down, as unconstitutional, the Frazier-Lemke Act of June 28, 1934, 11 U.S.C.A. § 203, sub. s. There the holding was that the statute, as applied, had, in effect, taken from a mortgagee and given to the mortgagor rights in specific property, contrary to the prohibition of the Fifth Amendment against taking private property for public use without just compensation. Pages 601, 602 of 295 U.S., pages 868, 869 of 55 S.Ct. In the instant case, it seems clear that there has been no taking of specific property for public use. It is true that the effect of the Portal-to-Portal Act is to benefit parties on one side of a transaction at the expense of parties on the other side, the same as in the "gold clause" cases, but such a result is consequential and not a direct taking of private property for public use.

When it enacted the Portal-to-Portal Act, Congress was dealing with a subject matter, namely, the regulation of labor relationships affecting interstate commerce, which was clearly within its constitutional power. Plaintiffs are not in a position to question that conclusion since Congress, in passing the Portal-to-Portal Act, exercised the same power as it did in the passage of the Fair Labor Standards Act, on which their claims are based. The constitutionality of the latter Act, moreover, has been established beyond question. Overnight Motor Transp. Co. v. Missel, supra, 316 U.S. 572, 576, 577, 62 S.Ct. 1216, 86 L.Ed. 1682; United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; Opp Cotton Mills v. Administrator, 312, U.S. 126, 657, 61 S.Ct. 524, 85 L.Ed. 624.

Whether claims for overtime pay, not based on express contract or custom under the Fair Labor Standards Act, constituted an actual interference with the public policy of Congress with reference to labor relations in interstate commerce, Congress alone had the power to determine. If Congress found that there was interference, and there was any substantial basis for its findings, its findings were final and conclusive. That Congress did so find and that there is substantial basis for its findings is apparent from Section 1 (a) of the Portal-to-Portal Act, 29 U.S.C.A. § 251 (a), which reads, in part, as follows:

"The Congress finds that the Fair Labor Standards Act of 1938, as amended, has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others, thereby resulting in the reduction of in-

dustrial operations, halting of expansion and development, curtailing employment, and the earning power of employees; (2) the credit of many employers would be seriously impaired; (3) there would be created both an extended and continuous uncertainty on the part of industry, both employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions between employers and between industries; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers and between employees and employees would be created; (7) the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged; (8) the Public Treasury would be deprived of large sums of revenues and public finances would be seriously deranged by claims against the Public Treasury for refunds of taxes already paid; (9) the cost to the Government of goods and services heretofore and hereafter purchased by its various departments and agencies would be unreasonably increased and the Public Treasury would be seriously affected by consequent increased cost of war contracts; and (10) serious and adverse effects upon the revenues of Federal, State, and local governments would occur.

"The Congress further finds that all of the foregoing constitutes a substantial burden on commerce and a substantial obstruction to the free flow of goods in commerce."

There remains for consideration the question whether the Portal-to-Portal Act was a reasonable exercise of congressional authority. When a statute is questioned on the ground that it transcends the limits of due process, the rule is that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relationship to the object sought to be attained. Nebbia v. People of State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469. Retirement Board v. Alton R. Co., supra, 295 U.S. 330, 347, 55 S.Ct. 758, 79 L.Ed. 1468. In the application of that rule, the findings of Congress are not conclusive. The reasonableness of legislative action is a question for judicial determination, which will be decided by the Courts for themselves. Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 413, 43 S.Ct. 158, 67 L.Ed. 322, 28 A.L.R. 1321; Railroad Retirement Board v. Alton R. Co., supra, 295 U.S. 330, 347, 55 S.Ct. 758, 79 L.Ed. 1468; Federal Power Commission v. Natural Gas Pipeline Co., 315 U.S. 575, 586, 62 S.Ct. 736, 86 L.Ed. 1037; "Constitutionality of the Portal-to-Portal Act," 47 Columbia Law Review, 1011, 1018-1019.

There is a strong presumption in favor of the constitutionality of an Act of Congress. In re Sinking Fund Cases, 99 U.S. 700, 718, 25 L.Ed. 496, 504, United States v. Jacobs, 306 U.S. 363, 370, 59 S.Ct. 551, 83 L.Ed. 763. The presumption is rebuttable (Gorin v. United States, 9 Cir., 111 F.2d 712, 721, affirmed 312 U.S. 19, 61 S.Ct. 429, 85 L.Ed. 488) but the burden of proof is upon the one attacking the statute. State of California v. Anglim, 9 Cir., 129 F.2d 455; Id., 317 U.S. 669, 63 S.Ct. 74, 87 L.Ed. 537; Adkins v. Children's Hospital, 261 U.S. 525, 544, 43 S.Ct. 394, 67 L.Ed. 785, 24 A.L.R. 1238; Thompson v. Consolidated Gas Utilities Corporation, 300 U.S. 55, 70, 57 S.Ct. 364, 81 L.Ed. 510.

In the present case, therefore, if plaintiffs are to escape the direct and positive bar to their recovery, interposed by the Portal-to-Portal Act, they must meet the burden of showing that the Act is unconstitutional and void. The burden rests upon them both as to issues of law and issues of fact. It is their responsibility to adduce facts from which it will appear that under all the attendant circumstances, Congress acted unreasonably or arbitrarily when it enacted the statute as a means of carrying out the policy, which it had

adopted for the protection of interstate commerce. The question of the constitutionality of the statute has been raised by defendant's motion to dismiss the plaintiffs' complaint. The factual basis for disposition of the motion must be found in the allegations of the complaint, taking all properly pleaded facts as true. There are no allegations, whatsoever, in the complaint with reference to the Portal-to-Portal Act. I must conclude, therefore, that the plaintiffs have not met their burden of making a factual showing sufficient to warrant the conclusion that Congress acted unreasonably or arbitrarily.

If I should, in passing upon the motion to dismiss, take judicial notice of the hearings before the Committees of Congress, when the proposed Portal-to-Portal Act was under consideration, the result would be the same. Without detailing them, I deem it sufficient to say that the facts there presented were such as overwhelmingly to support the reasonableness of the legislation.

There remains for consideration only plaintiffs' contention that in its enactment of the Portal-to-Portal Act Congress, in effect, exercised judicial, rather than legislative, functions. That the passage of the Act was substantially influenced by the decision of the Supreme Court in the Mt. Clemens Pottery Case, there can be no doubt; but Congress did not attempt to reverse that decision or to render overtime compensation claims void ab initio. In fact, the Portal-to-Portal Act was predicated upon the assumption that such claims, under the Fair Labor Standards Act, as interpreted by the Supreme Court, were valid and undertook to relieve employers from liability thereon. It did not effect claims on which final judgment had been entered, or require refund of payments, previously made to employees. Congress did not, therefore, encroach upon the judicial domain in its enactment of the statute.

The motion to dismiss will be granted. An order may be prepared and presented in accordance with the foregoing opinion. The plaintiffs will be allowed thirty (30) days subsequent to the entry of the order in which to file an amended complaint.