**UNITED STATES of America, Plaintiff-Appellee, by Dorothy S. Greenberg, for herself as well as for the United States of America, Plaintiff-Relator-Appellant,**

v.

**The BURMAH OIL COMPANY LIMITED et al., Defendants-Appellees.**

**No. 1166, Docket 77–6022.**

United States Court of Appeals, Second Circuit.

Argued May 11, 1977.

Decided May 11, 1977.

Opinion June 1, 1977.

44

Richard B. Dannenberg, New York City (Burton L. Knapp, Aaron Lipper, Stephen Lowey, Lipper, Lowey & Dannenberg and Burton L. Knapp, New York City, of counsel), Frank Newman, Dallas, Tex. (Newman, Shook & Newman, P. C., Dallas, Tex., of counsel), for plaintiff-relator-appellant.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City (Charles Franklin Richter, Kent T. Stauffer, Asst. U. S. Attys., Southern District of New York, New York City, of counsel), for appellee United States of America.

Arthur L. Liman, New York City (Mark A. Belnick, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel), for defendants-appellees Summitt Marine Operations, Inc., Summitt I, Inc., Summitt II, Inc., Summitt III, Inc., Cherokee I Shipping Corp., Cherokee II Shipping Corp., Cherokee III Shipping Corp., Cherokee IV Shipping Corp., Cherokee V Shipping Corp., Energy Transportation Corp., C. Y. Chen, Joseph J. Cuneo and Jerome Shelby.

Melvyn L. Cantor, New York City (Simpson, Thacher & Bartlett, New York City, of counsel), for defendants-appellees The Burmah Oil Co. Limited, Burmah Oil Inc., Burmah Oil Tankers Limited, Bethel Marine, Inc., Southhold Marine, Inc., Vermont Marine, Inc., Burmah Gas Transportation Limited.

Cahill, Gordon & Reindel, New York City on the brief, for defendants-appellees Citicorp, Citibank, N. A., Citicorp Leasing, Inc., Citimarlease (Burmah I), Inc., Citimarlease (Burmah LNG Carrier), Inc. and Citimarlease (Burmah Liquegas), Inc.

Hughes, Hubbard & Reed, New York City, on the brief, for defendant-appellee General American Transportation Corp.

Donovan, Leisure, Newton & Irvine, New York City, on the brief, for defendant-appellee General Dynamics Corp.

Nathaniel S. Ruvell, New York City, on the brief, for defendant-appellee Elias J. Kulukundis.

Fried, Frank, Harris, Shriver & Jacobson, New York City, on the brief, for defendant-appellee John C. Bullitt.

Before LUMBARD and MESKILL, Circuit Judges, and JAMESON, District Judge.*

PER CURIAM:

This is an appeal from an Order and Judgment of the United States District Court for the Southern District of New York, Whitman Knapp, *Judge*, dismissing a *qui tam* action brought under the False Claims Act, 31 U.S.C. §§ 231–235, on the ground that relator failed to satisfy one of the jurisdictional prerequisites of that Act. The decision of the District Court was affirmed in open court. This opinion is being written at the request of relator. That request was joined in by the United States Attorney for the Southern District of New York.

■ The False Claims Act is designed to encourage the apprehension of profiteers by providing financial incentives to private parties to expose and prosecute fraud against the government. Relator seeks to recover damages and penalties for the United States and a reward for herself under the False Claims Act on the ground that the defendants, by means of fraudulent applications to the Maritime Administration, induced the government to pay out millions of dollars in construction differential subsidies under Title V of the Merchant Marine Act of 1936, as amended, 46 U.S.C. §§ 1151–1161, and to make construction loan guarantees under Title XI of the same act, 46 U.S.C. §§ 1271–1280. Applicants for Title V subsidies or Title XI guarantees must be United States citizens. The fraud of which relator complains involves an alleged failure, by the defendants, to meet these citizenship requirements.

On August 19, 1976, the front page of the *New York Times* contained the following news report:

The Securities and Exchange Commission, the Federal Maritime Administration and at least one Congressional committee are investigating whether the Burmah Oil Company, a major British concern, illegally received commitments for Federal guarantees or subsidies to build at least eight huge tanker ships in this country.

Hundreds of millions of dollars in shipbuilding projects and thousands of American shipyard jobs may be in jeopardy because of the possibility of fraud in applying for the Government ·backing, which is illegal for foreign companies under Federal law.

The report went on to explain that the *Times* had obtained a memorandum from one Richard Kurrus, a lawyer for Burmah Oil, to the president of Burmah Oil, expressing concern over the fact that the applications were based on a "fiction."

Six weeks later, on September 30, 1976, relator filed her complaint in the Southern District of New York. As is required by 31 U.S.C. § 232(C), she served upon the United States a "disclosure in writing of substantially all evidence and information in [her] possession material to the effective prosecution of [the] suit." Of the ten documents, or sets of documents thus disclosed, only one, the Kurrus memorandum, was not already in the physical possession of the government.

31 U.S.C. § 232(C) provides that, "[t]he court shall have no jurisdiction to proceed with any [*qui tam*] suit . . . whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the United States . . .

* Hon. William J. Jameson of the District of Montana, sitting by designation.

at the time such suit was brought."[1] Inasmuch as the information in the *Times* report was public knowledge and a copy of the report was in the files of the Justice Department, Judge Knapp found that the information was in the possession of the United States, and he dismissed the relator's suit for lack of jurisdiction. Judge Knapp's finding was amply supported by the record.

 Relator challenges Judge Knapp's finding that the government inevitably would have obtained the Kurrus memorandum itself in the course of its investigations. We need not examine that deduction. The government's possession of the material information contained in the memorandum is enough under the statute to divest the court of jurisdiction.

 We also reject relator's theory that the district court could take jurisdiction over this suit on the basis of her public service in assembling, organizing and integrating the information in the government's possession. The statute is clear and explicit. Jurisdiction is defeated by the government's possession of the information. Only where the process of organization produced new information, such as the disclosure of the existence or nature of a fraud, could it arguably provide a sufficient predicate for jurisdiction. Here, no new information concerning either the existence or the nature of the fraud was disclosed as a result of relator's efforts.[2]

---

1. In 1943, subsection (C) was added to section 232 of the False Claims Act. The change was made to discourage the filing of actions by parties having no information of their own to contribute, but who merely plagiarized information in indictments returned in the courts, newspaper stories or congressional investigations. *See United States ex rel. Sherr v. Anaconda Wire & Cable Co.,* 57 F.Supp. 106, 107–08 (S.D.N.Y. 1944), *aff'd,* 149 F.2d 680 (2d Cir.), *cert. denied,* 326 U.S. 762, 66 S.Ct. 143, 90 L.Ed. 458 (1945).

2. Relator claims that the Kurrus memorandum revealed the complicity of the Maritime Administration in the alleged fraud, thus disclosing vital information about the nature of the fraud. Assuming that the complicity of the Maritime Administration would be relevant, this information was clearly disclosed in the Times article,

 Finally, we need not decide whether the government's motion to dismiss this action was timely. Because the issue involved here relates to the court's jurisdiction, no motion by any party was necessary. The court could have raised the issue *sua sponte.*

The decision of the district court is affirmed.

which states that documents obtained by the Times, including the Kurrus memorandum, "indicate that officials of the Maritime Administration may have been aware that violations of Federal law might have been committed in connection with the Burmah guarantees and subsidies."

Further, in a footnote to her brief, relator points to three other documents she provided, which were not in the government's possession. After examining these documents, however, we conclude that they are of little or no relevance to the alleged fraud and that prior to the institution of relator's action the government already was in possession of a document containing whatever information of value these documents might arguably provide.